UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| H. STUART CAMPBELL, JR., AS EXECUTOR OF THE ESTATE OF H. STUART CAMPBELL, SR. §§§§§§§§§§ *Plaintiff*, <br><br> v. <br><br> TEXAS TEA RECLAMATION, LLC <br> *Defendant*. | NO. 3:20-cv-00090 |

## Plaintiff's Original Complaint and Jury Demand

H. Stuart Campbell, Jr., as Executor of the Estate of H. Stuart Campbell, Sr., files this Original Complaint and Jury Demand against Texas Tea Reclamation, LLC, who has breached numerous due on demand promissory notes.

### PARTIES

1. Plaintiff H. Stuart Campbell, Jr. is the executor of his father's estate, the Estate of H. Stuart Campbell, Sr. Campbell, Jr. is a Delaware citizen. At the time of his passing, Campbell, Sr. was a North Carolina citizen.

2. Defendant Texas Tea Reclamation, LLC is a Texas limited liability company whose members are John E. Williams, III and Dymra H. Williams. The Williamses are Texas citizens. Texas Tea Reclamation, LLC may be served through its registered agent, Dymra Henderson Williams, at 609 Royal Oaks Drive, Friendswood, Texas 77546, or wherever she may be found.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332. The parties are completely diverse, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, including but not limited to Defendant's failure to repay the promissory notes.

## FACTUAL ALLEGATIONS

5. H. Stuart Campbell, Sr. was a successful, hardworking, and generous businessman who, in his elder years, was taken advantage of by some of his family members, specifically John Williams III and Dymra Williams. In June of 2014, Campbell, Sr. paid for fifty-two of his family members to travel to, and spend several days in, Myrtle Beach, South Carolina for a family reunion.

6. Shortly after the family reunion, Campbell, Sr.'s nephew, John Williams III, and Williams's wife, Dymra Williams, traveled to New Jersey to meet with Campbell, Sr. and seek his substantial investment in a business that the Williams had not yet even formed.

7. On or about July 15, 2014, the Williamses presented their business opportunity to Campbell, Sr. and solicited his multi-million dollar investment in Texas Tea.

8. The Williamses presented Campbell, Sr. with a Strategic Business Plan and told him Texas Tea was poised to earn a multi-million dollar profit within its first fourteen to fifteen months of operations.

9. Texas Tea is an environmental and oil field services company that reclaims and remediates hydrocarbons from oil mud. It claims to have created unique machines to remediate oil pits and reclaim down hole oil and drilling rig soil. Texas Tea boasted that it held an unrivaled position in the market due to its pairing of unique machines and cutting edge chemistry.

10. When the Williamses presented the Strategic Business Plan to Campbell, Sr., the Williamses claimed to be seeking two levels of funding, $2.5 Million and $5.0 Million. The Williamses told Campbell, Sr. that Texas Tea conservatively would earn $21 Million to $29 Million in net profit in the first fourteen to fifteen months, depending on the amount of investment the

Williamses could raise. Even then, the Williamses claimed these figures did not include all of Texas Tea's potential revenue streams.

11. To lure Campbell, Sr. to invest, the Williamses represented to Campbell, Sr. that the Williamses had customers anxiously awaiting their work in Texas, Louisiana, South America, the Middle East, and Nigeria. The Williamses told Campbell, Sr. that Texas Tea already had strong connections in state government and throughout the Southern United States.

12. Just days after the Williamses' sales pitch to Campbell, Sr. in New Jersey, the Williamses filed a certificate of formation with the Texas Secretary of State's office to form Texas Tea Reclamation, LLC.

13. The Williamses formed Texas Tea on July 18, 2014.

14. The Williamses listed themselves as Texas Tea's only managers.

15. On July 31, 2014, Campbell, Sr. invested two million dollars in Texas Tea.

16. On July 31, 2014, Dymra Williams received $2 Million by wire transfer.

17. Dymra Williams is an attorney licensed by the State Bar of Texas.

18. The $2 Million investment was wired into Dymra Williams's law firm's IOLTA account.

19. Dymra Williams withdrew Campbell, Sr.'s $2 Million investment from her IOLTA account on July 31, 2014, the same day she received it.

20. Campbell, Sr.'s two million dollar capital contribution was the only capital contribution Texas Tea received in 2014.

21. Despite the Williamses' projections of Texas Tea earning $21 Million to $29 Million in net profit in a little more than one year, in 2014, the year in which Campbell, Sr. invested two million dollars, Texas Tea apparently realized a net *loss* of more than $400,000. Meanwhile, Dymra

Williams and John Williams, III paid themselves $74,000 and $90,000, respectively, out of the company.

22. The next year, notwithstanding the benefit of Campbell, Sr.'s significant infusion of cash, Texas Tea realized an even greater loss than the year before. In 2015, the company reported a nearly $1.5 Million net *loss*. The $1.5 Million net loss was far from the $21 Million net profit the Williamses projected to Campbell, Sr.

23. But, interestingly, despite the company suffering more than three times the loss as the prior year, the Williamses gave themselves hefty raises and paid themselves $165,000.00 each, more than doubling their combined payout from the year before. In doing so, the Williamses doubled amounts they paid themselves for managing a company that *lost* more than three times as much money as in the prior year.

24. In 2015, Dymra Williams approached Campbell, Sr. again and held over his head the possibility of the Williamses soliciting outside investors and diminishing Campbell, Sr.'s interest in the company. Texas Tea needed more funding. Campbell, Sr. wanted to keep the investment within the family but, this time, Campbell, Sr. ensured his future investments were in the form of demand promissory notes.

25. For more than two and one-half years, from December of 2015 until August of 2018, Campbell, Sr. and Texas Tea entered into twenty-eight demand promissory notes by which Campbell, Sr. loaned Texas Tea more than $2.3 Million not including his initial $2 Million capital contribution.

26. Each note accrued interest at eight percent per annum, compounded annually, until Texas Tea repays the notes in full.

27. Each note matures on demand. And each note's principal and all accrued and unpaid interest is due and payable upon demand.

28. If, as has occurred here, Campbell, Sr. is forced to retain counsel to enforce the demand promissory notes, Texas Tea agreed to immediately pay on demand all reasonable attorneys' fees and other costs, together with interest from the date of demand until paid, as if such attorneys' fees and costs had been added to the principal.

29. Texas Tea agreed that time is of the essence with respect to every provision of each demand promissory note.

30. By 2016, Texas Tea was still reporting significant net losses—this time more than $1.1 Million. Yet, Dymra Williams and John Williams, III paid themselves another $330,000.00 out of the company.

31. Texas Tea reported a net loss in 2017 in the amount of $1.1 Million, and yet its managers continued distributing $330,000.00 to themselves.

32. Campbell, Sr. passed away on December 28, 2018.

33. Campbell, Jr. requested the Williamses provide him with copies of Texas Tea's profit and loss statements in light of Campbell, Sr.'s significant investment and interest in the company. The Williamses refused to provide Campbell, Jr. with copies of Texas Tea's profit and loss statements.

34. On December 12, 2019, in furtherance of his fiduciary responsibility to the beneficiaries of Campbell, Sr.'s estate, Campbell, Jr. also made a formal demand on Texas Tea to repay the outstanding promissory notes, plus interest and attorney's fees.

35. Texas Tea has refused to repay the promissory notes upon demand, along with all accrued interest and attorney's fees.

36. Texas Tea has not paid Campbell, Sr. or his estate any of the principal, interest, or fees that are due on the notes. Interest and fees continue to accrue.

**CAUSES OF ACTION**

37. Campbell, Jr. incorporates his prior allegations as if they were set forth within each of the following causes of action.

### Counts 1 through 28
### Breach of Contract

38. As stated above, Campbell, Sr. and Texas Tea are parties to twenty-eight demand promissory notes that memorialized Campbell, Sr.'s loan of more than $2.3 Million to Texas Tea.

39. Each note is due and payable upon demand, including all principal and accrued and unpaid interest.

40. On December 12, 2019, Campbell, Jr., as Executor of the Estate of H. Stuart Campbell, Sr., made a written demand upon Texas Tea to repay the promissory notes, plus interest and attorney's fees.

41. Campbell, Sr. tendered performance under the notes by transferring the money to Texas Tea.

42. Texas Tea has not repaid the promissory notes or any of the accrued interest or fees on the notes.

43. As a result of Texas Tea's default and breach of the demand promissory notes, Texas Tea has forced Campbell, Jr. to retain counsel to enforce the provisions of the promissory notes.

44. Campbell, Sr. has performed all conditions, covenants, and promises required on his part in accordance with promissory notes.

45. The Estate of H. Stuart Campbell, Sr. has been damaged and injured as a result of Texas Tea's breaches for which Campbell, Jr., as Executor of the Estate of H. Stuart Campbell, Sr., seeks to recover.

## CONDITIONS PRECEDENT

46.     All conditions precedent to Campbell, Jr.'s claims for relief have been performed, waived, or have occurred.

## ATTORNEY'S FEES

47.     Campbell, Jr. has retained counsel to prosecute these claims and seeks the relief to which he is entitled. The estate, through Campbell, Jr., is entitled to recover all of its costs and expenses, including its reasonable attorney's fees.

## JURY DEMAND

48.     Campbell, Jr. demands a jury trial under Federal Rule of Civil Procedure 38.

## PRAYER

Plaintiff H. Stuart Campbell, Jr., as Executor of the Estate of H. Stuart Campbell, Sr., requests the Court to grant judgment in his favor, as executor of his father's estate, and award him all damages, pre- and post-judgment interest, court costs, attorney's fees, and all other relief to which Campbell, Jr. shows the estate to be entitled.

Dated: March 19, 2020

        Respectfully submitted,

        **CHAMBERLAIN, HRDLICKA, WHITE,**
           **WILLIAMS & AUGHTRY, P.C.**

        By:     /s/Kellen R. Scott
           Kellen R. Scott
           Attorney-in-Charge
           Texas State Bar No. 24070579
           S.D. Tex. ID No. 1054528
           1200 Smith Street, Suite 1400
           Houston, Texas 77002
           Telephone: (713) 658-1818
           Facsimile: (713) 658-2553
           kellen.scott@chamberlainlaw.com

        **ATTORNEYS FOR PLAINITFF**

**OF COUNSEL:**
Ryan Oliver Cantrell
Texas State Bar No. 24055259
S.D. Tex. ID No. 612310
**CHAMBERLAIN, HRDLICKA, WHITE,
    WILLIAMS & AUGHTRY, P.C.**
1200 Smith Street, Suite 1400
Houston, Texas 77002
Telephone: (713) 658-1818
Facsimile: (713) 658-2553
ryan.cantrell@chamberlainlaw.com