

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| H. Stuart Campbell, Jr., as Executor of the Estate of H. Stuart Campbell, Sr. | § § § | |
| v. | § § | Civil Action No. 3:20-cv-00090 |
| Texas Tea Reclamation, LLC, *et al.* | § § § § | |

**Plaintiff's Response in Opposition to Dymra Henderson Williams's and John E. Williams, III's Rule 12(b)(6) Motion to Dismiss Counts 29 and 35 of Plaintiff's Second Amended Complaint**

H. Stuart Campbell, Jr., as Executor of the Estate of H. Stuart Campbell, Sr., responds in opposition to Dymra Henderson Williams's and John E. Williams, III's motion to dismiss ("Motion") [Doc No. 33]. Because Campbell, Jr. has made more than sufficient allegations to state plausible claims for relief, the Court should deny the Williamses' Motion.

## INTRODUCTION

Texas Tea Reclamation, LLC's and the Williamses fraudulently induced H. Stuart Campbell, Sr. to invest millions upon millions of dollars in their struggling business and subsequently misappropriated the loaned funds. Over the course of approximately four years, Texas Tea and the Williamses approached Campbell, Sr. for money ostensibly to support Texas Tea's business operations. In reliance on their repeated fraudulent representations as to the company's performance and the intended use for Campbell, Sr.'s money, and unwittingly trusting his own family members, Campbell, Sr. funded Defendants with nearly $4.4 Million in the form of a $2 Million capital contribution and twenty-eight

1

demand promissory notes. The Williamses then surreptitiously transferred the loaned funds from Texas Tea to themselves, whereupon the Williamses used Campbell, Sr.'s money to pay themselves exorbitant—and wholly unjustified—"compensation" and to cover personal debts and expenses.

Hoping to take advantage of Campbell Sr.'s passing to simply sweep their misconduct and self-dealing under a procedural rug, the Williamses seek dismissal of Count 29 for defalcation and breach of fiduciary duties owed to Campbell, Sr. and Count 35 for unjust enrichment.  As discussed herein, and as is readily apparent from Campbell, Jr.'s Second Amended Complaint, Plaintiff has stated claims for relief against the Williamses, and the Court should deny their Motion in its entirety.

## STANDARD OF REVIEW

"Motions to dismiss are viewed with disfavor and are rarely granted." *Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 570 (5th Cir. 2005). Rule 8 only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). It does not require "an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Fla. Inc.*, 295 F. App'x 710, 713 (5th Cir. 2008). The Court must accept Campbell, Jr.'s factual allegations as true, view them in a light most favorable to him, and draw all reasonable inferences in his favor. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).

Campbell, Jr.'s complaint includes factual matter that, when accepted as true, states a claim for relief that is "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual matter is taken as true, viewed in a light most favorable to Campbell, Jr., and need only allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The right to relief must rise above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Put another way, Campbell, Jr. need only "nudge[] [his] claims across the line from conceivable to plausible" *Id.* at 570. The Williamses' Motion fails because Plaintiff's Second Amended Complaint sets forth—far more than, but at least—facially plausible claims for relief against the Williamses.

ARGUMENT AND AUTHORITIES

**1.   The Williamses owed fiduciary duties to Campbell, Sr. as controlling managers of Texas Tea.**

Campbell, Jr. has sufficiently pleaded facts sufficient to state a formal fiduciary relationship between Campbell, Sr. and the Williamses. Although the Limited Liability Act, which establishes the existence of LLCs, is silent on whether a formal fiduciary relationship is imposed on members in a LLC, Texas courts have consistently held that a formal fiduciary relationship may arise between an LLC's members. *See McBeth v. Carpenter*, 565 F.3d 171, 178 n.1 (5th Cir. 2009) (recognizing fiduciary duties "spring into existence when a limited partner 'actively engages in control over the operation of the business so as to create duties that otherwise would not exist.'"); *Strebel v. Wimberly*, 371 S.W.3d 267, 279 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) ("[A] party's status as a limited partner does not insulate that party from the imposition of fiduciary duties that arise when a limited partner also takes on a

nonpassive role by exercising control over the partnership in a way that justifies the recognition of such duties or by contract.); *Suntech Processing Sys., L.L.C. v. Sun Communications, Inc.*, 2000 WL 1780236, at *7 (Tex. App.—Dallas 2000, pet. denied). A fiduciary duty may arise between members based, at least in part, in situations in which the members are in "unequal" positions of power, such as when one member exercises superior control over the LLC. *See Suntech,* 2000 WL 1780236, at *6-7.

In *Cardwell v. Gurley*, 2011 WL 6338813, at *2 (E.D. Tex. 2011), the court held that an LLC's managing member owed the other LLC member direct fiduciary duties of loyalty, due care, and full disclosure as a matter of law. These duties were "independent of and in addition to" the duties that the managing member owed to the LLC. *Id.* The managing member owed the other LLC member fiduciary duties that arose out of the members' longstanding relationship which caused the non-managing member to vest his trust and confidence in the managing member to properly and lawfully manage their investments. *Id.* Campbell, Jr. has made similar allegations in this case. *See* [Doc. 30] Second Amended Complaint ¶¶ 20, 100, 101, 102.

The justification for imposing a fiduciary duty on members of LLCs parallels the rationale for fiduciary duties in partnerships. As Texas courts have recognized, "membership in a limited liability company is analogous to a partnership interest in a partnership insofar as a member has no ownership interest in any specific property of the company but has a right to receive distributions when they are made." *Pajooh v. Royal W. Investments LLC, Series E*, 518 S.W.3d 557, 565 (Tex. App.—Houston [1st Dist.] 2017, no pet.). In a partnership, "[i]t is axiomatic that a managing partner in a general partnership, owes his co-partners the highest

4

fiduciary duty recognized in the law." *McBeth v. Carpenter*, 565 F.3d 171, 177 (5th Cir. 2009) (quoting *Crenshaw v. Swenson,* 611 S.W.2d 886, 890 (Tex. Civ. App. 1980)).

While a limited partner's status as a passive investor does not give rise to fiduciary duties, it "does not insulate that party from the imposition of fiduciary duties that arise when a limited partner also takes on a nonpassive role by exercising control over the partnership in a way that justifies the recognition of such duties." *Strebel v. Wimberly*, 371 S.W.3d 267, 279 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Thus, fiduciary duties are not always tied to one's title or role, but may attach when the partners or members are in unequal positions and one partner or member "exerts operating control" over the organization. *See id.* at 281. The Fifth Circuit has recognized that, "the issue of control has always been a critical fact looked at by the courts" in imposing a formal fiduciary relationship. *In re Bennett,* 989 F.2d 779, 789 (5th Cir. 1993).

Here, the Williamses exerted complete operating control over Texas Tea, excluding Campbell, Sr. from participating in corporate decisions or receiving distributions, thus justifying the imposition of a formal fiduciary duty. [Doc. 30] Second Amended Complaint ¶ 46. The Williamses listed themselves as Texas Tea's only managers in its formation documents; Jack Williams held himself out as Texas Tea's Chief Executive Officer and Manager; and Dymra Williams held herself out as Texas Tea's General Counsel and Managing Partner. *Id.* ¶¶ 16–19. By contrast, Campbell, Sr. merely received a membership interest in Texas Tea with his initial $2 Million investment. *Id.* ¶ 27.

The Williamses and Campbell, Sr. were in unequal positions of power and not simply co-equal members of Texas Tea. *Id.* ¶ 100. The Williamses actively exercised superior control

5

over all aspects of Texas Tea's business operations. *Id.* Like a limited partner who takes control of a partnership, the Williamses exercised total control over Texas Tea's business affairs. *Id.* The Williamses did not include Campbell, Sr. in any of Texas Tea's business decisions, most notably, their systemic self-dealing and transfers of money and assets. *Id.* ¶¶ 21, 46, 48.  Importantly, Campbell, Sr. never executed an operating agreement or company agreement related to Texas Tea's operations. *Id.* ¶ 48. And although the parties could have agreed in a company agreement to restrict or limit the existence of fiduciary duties (TEX. BUS. ORG. CODE §§ 101.401, 101.606), they did not do so. *Id.* Plaintiff has sufficiently pled the existence of a fiduciary duty: By exercising complete control over the operations of Texas Tea to the exclusion of Campbell, Sr., the Williamses assumed a formal fiduciary duty under Texas law to their uncle and business partner, Campbell, Sr.

Additionally, when a limited partner serves as an officer in a limited partnership, "that partner may owe fiduciary duties based on his agency relationship to the partnership and the other limited partners, without regard for his limited partner role." *Strebel*, 371 S.W.3d at 281. This is because "[t]he duty of loyalty dictates that a corporate officer or director must act in good faith and must not allow his or her personal interest to prevail over the interest of the corporation. The duty of loyalty requires an extreme measure of candor, unselfishness, and good faith on the part of the officer or director." *Mims v. Roth (In re Performance Nutrition, Inc.)*, 239 B.R. 93, 110 (Bankr. N. D. Tex. 1999) (internal citations omitted).

In this case, the Williamses exerted control over Texas Tea's affairs in their capacities as Chief Executive Officer, General Counsel, and as Managing Partners. [Doc. 30] Second Amended Complaint ¶ 100. Even if the Williamses did not owe Campbell, Sr. a formal

fiduciary duty based on their complete operational control over Texas Tea, they, as officers, at least owed Campbell, Sr. the duty to act in good faith and not allow their personal interests to prevail over Texas Tea's or Campbell, Sr.'s. *See Cardwell,* 2011 WL 6338813, at *2 (holding that managing member of LLC owed only other member of the LLC direct fiduciary duties of loyalty, due care, and full disclosure as a matter of law, independent of and in addition to, the duties he owed to the LLC); [Doc. 30] Second Amended Complaint ¶ 102.

The Williamses refer to a summary judgment case—*Gill v. Greenval*—in which the Court mentioned, in dicta, that it previously questioned whether the plaintiff could recover on its breach of fiduciary duty claim because it appeared that the fiduciary duty, if any, was owed to the LLC. *See Gill v. Grewal*, 2020 WL 3171360, at *11 (S.D. Tex. 2020); Defs' MTD at 8. *Gill* is not applicable here because the plaintiff did not assert a fiduciary duty claim based upon the managers' management of the LLC, as Campbell, Jr. does. *See Gill*, 2020 WL 3171360, at *11. The plaintiff clarified that its claim was based on an informal fiduciary duty. *Id.* The plaintiff did not offer any allegations or argument why the court should impose a formal fiduciary duty on the other members of the LLC, and therefore the Court did not decide the existence of a formal fiduciary duty related to a managing member's conduct, much less whether the plaintiff pleaded a plausible claim for relief. *See id.*

Here, unlike in *Gill*, Campbell, Jr. has alleged more than sufficient facts to show that the Williamses' complete operational control over Texas Tea justifies the recognition of a formal fiduciary relationship between the Williamses and Campbell, Sr. Thus, the Court should deny the Williamses' Motion on this point.

**2.      Campbell, Sr.'s trusting relationship with the Williamses goes beyond a mere familial association, creating an informal fiduciary relationship.**

Campbell, Jr. has sufficiently pleaded facts sufficient to establish an informal fiduciary relationship between Campbell, Sr. and the Williamses as well. And any dispute as to the establishment of an informal duty is properly decided by the fact-finder after conducting discovery. *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962); *ARA Auto. Group v. Central Garage Inc.*, 124 F.3d 720, 723 (5th Cir. 1997).

**2.1      Campbell, Sr. trusted his nephew and his nephew's wife to properly and fairly run Texas Tea because of continuing assurances from the Williamses and evidenced by the repeated loans to the company.**

An informal fiduciary relationship exists, "where, because of family relationships or otherwise, [one party] is in fact accustomed to be guided by the judgement or advice" of the other. *Thigpen*, 363 S.W.2d at 253. This type of fiduciary duty arises from a "moral, social, domestic, or purely personal relationship if trust and confidence." *Fed. Ins. Co. v. Rodman, LLC*, 2011 WL 5921529, at *3 (N.D. Tex. 2011).  If a business transaction is involved, the confidential relationship must exist prior to, and apart from, the agreement made the basis of the suit. *Associated Indem, Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998); *Gill*, 2020 WL 3171360, at *12. Determining the existence of an informal fiduciary duty is a fact intensive inquiry, which requires an investigation into the "actualities of the relationship between the persons, involved." *Thigpen*, 363 S.W.2d at 253; *ARA Auto. Group*, 124 F.3d at 723.

Courts recognize informal fiduciary relationships when the parties have longstanding relationships, and the plaintiff relied on the defendant for guidance. *See Lee v. Hasson*, 286 S.W.3d 1, 15 (Tex. App.—Houston 2007, pet. denied) (plaintiff and defendant "shared a

long-standing business relationship and a close personal family relationship well beyond casual friendship," where "[plaintiff] relied on [defendant] for moral, financial, and personal guidance or support," and their relationship predated their agreements by approximately six years."); *Flanary v. Mills*, 150 S.W.3d 785, 794 (Tex. App.—Austin 2004, pet. denied) (finding that a fiduciary relationship existed where the parties were related and had a long-standing working relationship).

Here, like in *Flanary*, Jack Williams was Campbell, Sr.'s nephew and Dymra Williams was Jack Williams's wife, establishing a family relationship. *See Flanary*, 150 S.W.3d at 794; [Doc. 30] Second Amended Complaint ¶ 9. In fact, the genesis of these events stems from a family reunion in Myrtle Beach, South Carolina, which Campbell, Sr. hosted at his expense. *See id.* ¶ 8. Additionally, like in *Lee*, the Williamses and Campbell, Sr. had a long-standing relationship, which caused Campbell, Sr. to vest his trust and confidence in his family members to properly and lawfully manage his investments and Texas Tea's business operations. *See Lee v. Hasson*, 286 S.W.3d at 15; [Doc. 30] Second Amended Complaint ¶ 101. This trusting familial relationship predated Campbell, Sr.'s capital contribution and promissory notes to Texas Tea. *See id.* ¶¶ 8, 21.

The Williamses preyed upon this relationship and continually misrepresented the state of the company and the company's prospects to ensure consistent, extensive investment by Campbell, Sr. to sustain their lifestyle. *Id.* The fact the Williamses convinced Campbell, Sr. to make an additional twenty-eight loans to Texas Tea after an initial capital infusion of $2,000,000 is enough evidence in itself to demonstrate the degree of trust and confidence Campbell, Sr. placed in his family. Yet, despite convincing Campbell, Sr., to

9

commit $4,400,000 to this venture with assurances and false promises, the Williamses now seek to disavow the very relationship of trust they themselves fostered and created.

Campbell, Jr. has alleged sufficient facts to establish his breach of informal fiduciary duty claim, and the Court should deny the Williamses' Motion.

### 2.2    At minimum, there are disputed issues of fact leaving resolution of this question improper for the Court at this stage.

Campbell, Jr. has properly alleged the existence of an informal fiduciary duty between the Williamses and Campbell, Sr., or, at minimum, created a question of fact regarding the matter. Because the inquiry of whether an informal fiduciary relationship exists is a fact-specific inquiry, it is "usually not subject to dismissal under Rule 12(b)(6)." *Seven Seas Petroleum, Inc. v. CIBC World Markets, Corp.*, 2010 WL 2277489, at *7 (S.D. Tex. 2010) (citing *JPMorgan Chase Bank, N.A. v. IDW Group, LLC*, 2009 WL 321222, at *9 (S.D.N.Y. 2009)); *See Gadin v. Societe Captrade*, 2009 WL 1704049, at *3 (S.D. Tex. 2009) (denying motion to dismiss because existence of informal fiduciary duty required a fact-specific inquiry); *Herrin v. Med. Protective Co.*, 89 S.W.3d 301, 308 (Tex. App.—Texarkana 2002, pet. denied) ("[d]etermining whether an informal fiduciary relationship exists is an issue for the trier of fact.").

The existence of an informal fiduciary relationship "may only be resolved as a matter of law 'when the evidence offered is no evidence of a fiduciary relationship.'" *Bennigan's Franchising Co., LP v. Sweet Onion, Inc.*, 2010 WL 11534477, at *3 (N.D. Tex. 2010) (citing *ARA Auto. Group,* 124 F.3d at 723). "Such a conclusion may not be made one way or another upon a Rule 12(b)(6)." *Bennigan's Franchising Co., LP*, 2010 WL 11534477, at *3

(deciding the party stated a claim for breach of fiduciary duty, and "whether the evidence will support the allegation is a question for another day").

Here, Campbell, Jr.'s factual allegations support an inference of the existence of an informal fiduciary relationship between the Williamses and Campbell, Sr. Campbell, Jr. alleged that Campbell, Sr. and the Williamses had a close family relationship, attended a family reunion together, and Campbell, Sr. trusted the Williamses' advice when making business decisions such as repeatedly loaning Texas Tea money amounting to millions of dollars. *See* [Doc. 30] Second Amended Complaint ¶¶ 8-11, 101. To the extent the Williamses challenge the extent of the familial relationship and trust, such questions should be determined by the fact-finder and not resolved in a motion to dismiss before the parties have conducted discovery. The Court should deny the Williamses' Motion on this point as well.

### 3.    Campbell, Jr.'s Second Amended Complaint states a claim for unjust enrichment.

The Second Amended Complaint properly states a claim for unjust enrichment. *See* [Doc. 30] Second Amended Complaint ¶¶ 150–51. Unjust enrichment "allows recovery 'when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'" *Perales v. Bank of Am., N.A.*, 2014 WL 3907793, at *3 (S.D. Tex. 2014) (citing *Heldenfels Bros., Inc. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex. 1992)). Thus, unjust enrichment "occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Digital Drilling Data Sys., L.L.C. v. Petrolink Services, Inc.*, 965 F.3d 365, 380 (5th Cir. 2020).

**3.1    The well-pleaded factual allegations underlying Campbell, Jr.'s unjust enrichment claim are more than sufficient to state a plausible claim for relief.**

The Williamses claim that Campbell, Jr.'s unjust enrichment claim should be dismissed because it fails to meet the pleading standards of Rule 9(b), but Campbell, Jr.'s equitable, unjust enrichment claim is not dependent upon the Williamses engaging in fraudulent conduct. The claim "instead focuses simply on whether the [defendants] received a benefit that 'would be unconscionable to retain.'" *Janvey v. Alguire*, 846 F. Supp. 2d 662, 677 n.15 (N.D. Tex. 2011). As such, Rule 9(b) does not apply. *See id.*; *Berry v. Bryan Cave LLP*, 2010 WL 1946264, at *8 (N.D. Tex. 2010). For this reason alone, the Court should deny the Williamses' motion as to Campbell, Jr.'s unjust enrichment claim.

When subject to a motion to dismiss, a claim for unjust enrichment is properly analyzed under Rule 12(b)(6)'s plausibility framework. *Janvey v. Alguire*, 2018 WL 4335677, at *4 (N.D. Tex. 2018) (unjust enrichment claim based on fraudulent Ponzi scheme not analyzed under 9(b) pleading standard); *Berry v. Bryan Cave LLP*, 2010 WL 1946264, at *8 (N.D. Tex. 2010) (disagreeing that unjust enrichment must be pleaded with 9(b) particularity and applying the 12(b)(6) pleading standard); *Janvey for Stanford Int'l Bank, Ltd. v. Alvarado*, 2015 WL 13739416, at *2 (N.D. Tex. 2015; *Janvey v. Bogar*, 2014 WL 4907074, at *2 (N.D. Tex. 2014). Campbell, Jr. has plausibly alleged that the Williamses received benefits that would be unconscionable for them to retain.

Even if Rule 9(b) applied, Rule 9(b) is designed to weed out cases with "no reasonably founded hope" of substantiation after discovery. *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*, 972 F.3d 684, 687 (5th Cir. 2020). The particularity

demanded by Rule 9(b) differs with the facts of each case. *Tuchman v. DSC Commc'ns. Corp.*, 14 F.3d 1061, 1067–68 (5th Cir. 1994). However, the Fifth Circuit has made clear Rule 9(b) does not supplant Rule 8(a)'s notice pleading standard. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009). Rule 9(b) does not require "fact pleading," only "simple, concise, and direct" allegations of the circumstances constituting the fraud. *Id.* A plaintiff must set forth specific facts to support an inference of fraud, and can satisfy this requirement if it, (1) shows the defendants' motive to commit fraud; or (2) identifies circumstances that indicate their conscious behavior. *Colonial Oaks*, 972 F.3d at 689–90. Even though the Rule 9(b) pleading standard is heightened, it is not plaintiff's burden at this stage of the proceedings to prove its claims. It must merely allege facts which, taken as true, make relief plausible. *See U.S. ex rel. Grubbs*, 565 F.3d at 186.

Here, Campbell, Jr. pleaded sufficient facts to establish his underlying fraud and fraudulent transfer claims with the specificity required by Rule 9(b) and to establish his unjust enrichment claim under Rule 8(a). *See* Plaintiff's Response to Texas Tea's Motion to Dismiss, incorporated herein by reference (FED. R. CIV. P. 10(c)). As set forth in the Second Amended Complaint, the Williamses solicited Campbell, Sr.'s multi-million dollar investment in Texas Tea, and induced Campbell, Sr. to repeatedly loan them the funds over a four-year period between July 31, 2014 and December 2018, based on their misrepresentations that they already had customers waiting for their product and that they needed ongoing infusions of cash to cover Texas Tea's operating expenses; all of which was knowingly false. *See* Second Amended Complaint ¶¶ 10, 17, 29. The Williamses made these representations

repeatedly throughout the business relationship to ensure Campbell, Sr. continued to fund what was in fact a shell enterprise. *Id.*

In fact, instead of using the loaned funds for Texas Tea's operating expenses as represented, the Williamses used the funds, among others, to pay themselves exorbitant salaries, pay off a personal tax lien the IRS placed on their home, and to purchase a new home. *See* [Doc. 30] Second Amended Complaint ¶ 156. The Williamses' appropriation of increasingly large salaries to themselves while Texas Tea reported increasing yearly net losses, and the convenient timing of the Williamses' requests for and receipt of new loans from Campbell, Sr., coupled with the Williamses' satisfaction of their tax obligations and purchase of a new home, is more than sufficient to show the Williamses' motive to commit fraud and support an inference of fraud. *See Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.,* 972 F.3d 684, 690 (5th Cir. 2020); [Doc. 30] Second Amended Complaint ¶ 37-44, 84-85.

Additionally, Campbell, Jr.'s Second Amended Complaint alleges enough facts to state a claim for unjust enrichment that is plausible on its face and defeat the Williamses' Motion to Dismiss. *See Ashcroft,* 129 S. Ct. at 1949. Campbell, Jr. alleges the Williamses obtained a benefit from Campbell, Sr. by fraud, breaching their fiduciary duties, and taking undue advantage of him. [Doc. 30] Second Amended Complaint ¶ 150. The Williamses continuously sought funds from Campbell, Sr. to use for their own personal expenses rather than for Texas Tea's operating expenses. *See id.* at ¶ 156. The Williamses misappropriated the funds Campbell, Sr. loaned to Texas Tea by transferring the funds to themselves for personal use and without an exchange of reasonably equivalent value. *See id.* at ¶ ¶ 37, 39-40,

14

44, 76-81, 151, 156. It would be unconscionable for the Williamses to retain the funds the Williamses transferred to themselves. *See id.* at ¶ 151.

As Campbell, Jr. has properly stated a claim for unjust enrichment, the Court should deny the Williamses' Motion on this point.

### 3.2    A valid contract does not govern the unjust enrichment claim.

The Williamses claim Campbell, Jr.'s claim for unjust enrichment should be dismissed because there are express contracts that govern the parties' dispute; however, the promissory notes that form the basis of Campbell, Jr.'s contract claims are contracts between Campbell, Sr. and Texas Tea, not the Williamses. *See* Defs' MTD at 12; [Doc. 30] Second Amended Complaint ¶ 88. Because the Williamses are not parties to the promissory notes, and Campbell. Jr.'s unjust enrichment claim is based on the Williamses' wrongful retention of a benefit rather than an effort to secure any rights or obligations under the promissory notes, Campbell, Jr.'s unjust enrichment claim is proper.

This case is analogous to *In re IFS Fin. Corp.*, 2007 WL 4244115, at *6 (Bankr. S.D. Tex. 2007). In *IFS Fin. Corp.*, the bankruptcy trustee asserted an unjust enrichment claim against the defendants based on their alleged fraudulent and unlawful conduct. *Id.* Essentially, plaintiff made loans in the form of promissory notes to the individual defendants' businesses, and the businesses then transferred the funds to the individual defendants. *Id* at *1-2. The individual defendants' businesses were also named defendants in the suit. *Id* at *1. The individual defendants filed a motion for the judgment on the pleadings on plaintiff's unjust enrichment claims, contending that plaintiff's claim was barred by its previous release of any attempt to collect on the notes. *Id* at *6.

The court rejected the defendants' arguments, noting that the "unjust enrichment claim is not based on the Notes. . . [it] is based on the [defendants'] alleged fraudulent and unlawful conduct." *In re IFS Fin. Corp.*, 2007 WL 4244115, at *6. Although the promissory notes to the individual defendants' business "served as the vehicle" through which the individual defendants were allegedly unjustly enriched, the plaintiff did not seek recovery based on a contract or the notes. *Id* at *6-7. Rather, the plaintiff "seeks recover based on benefits received through conduct that may be sufficient to warrant an unjust enrichment finding." *Id* at *7.

Here, just like in *IFS Fin. Corp.*, Campbell, Jr.'s unjust enrichment claim against the Williamses is not based on the promissory notes; it is based on the Williamses' unjust conduct. *See In re IFS Fin. Corp,* 2007 WL 4244115, at *6; [Doc. 30] Second Amended Complaint ¶¶ 88, 150-51. Although the promissory notes served, in part, as a vehicle through which the Williamses enriched themselves, "the vehicle is irrelevant" to the elements of Campbell, Jr.'s unjust enrichment cause of action. *See In re IFS Fin. Corp,* 2007 WL 4244115, at *6; [Doc. 30] Second Amended Complaint ¶¶ 88, 150-51. Campbell, Jr.'s cause of action against the Williamses is not based on rights or obligations arising from the promissory notes. *See id.* ¶¶ 88, 150-51. Campbell, Jr.'s cause of action is based on the Williamses' conduct. *See In re IFS Fin. Corp,* 02-39553, 2007 WL 4244115, at *7; [Doc. 30] Second Amended Complaint ¶¶ 37, 39-40, 44, 76-81, 150-51, 156.

The Williamses cite several cases to support their belief that Campbell, Jr. cannot pursue his claim for unjust enrichment but, notably, each of the cases the Williamses cite involves an unjust enrichment claim made by one party to a contract against the other

contracting party. *See Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671, 674 (Tex. 2000) (unjust enrichment claim based on a sales contract between natural gas producer and purchaser); *Curtis v. Cerner Corp.*, 2020 WL 4934950, at *2 (S.D. Tex. 2020) (unjust enrichment claim based on master service agreements between plaintiff and defendants); *Westinde v. JPMorgan Chase Bank, N.A.*, 2014 WL 4631405, at *1 (N.D. Tex. 2014) (unjust enrichment claim based on note and deed of trust executed by plaintiff to defendant). That situation is not present here—and the cases the Williamses cite are inapposite—because the Williamses are not parties to the promissory notes. *See* [Doc. 30] Second Amended Complaint ¶ 88.

Accordingly, Campbell, Jr. properly stated his claim for unjust enrichment against the Williamses, and the Court should deny the Williamses' motion to dismiss.

## 4.    Although Plaintiff's Complaint is sufficient, Campbell, Jr. alternatively requests leave to amend pleadings and cure any deficiencies.

As set forth herein and in Plaintiff's Response to Texas Tea's Motion to Dismiss, Plaintiff's Second Amended Complaint goes well beyond the minimal pleading standards required to survive a Rule 12(b)(6) Motion to Dismiss. However, to the extent this Court believes any aspect of Plaintiff's claims is lacking, Plaintiff respectfully and alternatively moves for leave under Federal Rule of Civil Procedure 15 to amend and cure any such deficiency. Trial courts are to give leave to amend freely when justice so requires. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lyn-Lea Trave Corp. v. American Airlines, Inc.,* 283 F.3d 282, 286 (5th Cir. 2002). There is no prejudice to the Williamses or Texas Tea as ample time exists for discovery to be completed with respect to the amendments proposed. *See Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). Moreover, the amendments would not be

futile, as they would allow Campbell, Jr.'s claims to defeat a Rule 12(b)(6) Motion to Dismiss. *See Smith*, 393 F.3d at 595.

Additionally, as any such amendments would merely clarify prior allegations asserted, as opposed to raising entirely new causes of action, the relevant case precedent from within the Fifth Circuit indicates leave should be granted, if necessary. *See Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 246 n.2 (5th Cir. 1997) (an amendment that merely states an alternative theory of recovery on the same pled facts should be allowed). Thus, if the Court is inclined to grant any aspect of the Williamses' Motion, Campbell, Jr. respectfully requests leave to amend his pleadings to address any perceived deficiency.

## CONCLUSION

For the foregoing reasons, Campbell, Jr. requests that the Court deny the Williamses' Motion to Dismiss, or, alternatively, that the Court grant Campbell, Jr. leave to amend his pleadings, and for any other further relief to which Campbell, Jr. may be entitled.

Respectfully submitted,

**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, P.C.**

By:   /s/Kellen R. Scott
      Kellen R. Scott
      Attorney-in-Charge
      Texas State Bar No. 24070579
      S.D. Tex. ID No. 1054528
      1200 Smith Street, Suite 1400
      Houston, Texas 77002
      Telephone: (713) 658-1818
      Facsimile: (713) 658-2553
      kellen.scott@chamberlainlaw.com

**ATTORNEYS FOR PLAINTIFF**

**OF COUNSEL:**
Ryan Oliver Cantrell
Texas State Bar No. 24055259
S.D. Tex. ID No. 612310
**CHAMBERLAIN, HRDLICKA, WHITE,**
    **WILLIAMS & AUGHTRY, P.C.**
1200 Smith Street, Suite 1400
Houston, Texas 77002
Telephone: (713) 658-1818
Facsimile: (713) 658-2553
ryan.cantrell@chamberlainlaw.com

### Certificate of Service

    I hereby certify that a correct copy of the foregoing has been forwarded to the following parties through the Court's CM/ECF system or via electronic mail on October 13, 2020:

Jeffrey R. Elkin
Penn C. Huston
MOUERHUSTON PLLC
349 Heights Blvd.
Houston, Texas 77007

Andy Soto
MILLS SHIRLEY LLP
2228 Mechanic St., Ste. 400
Galveston, Texas 77550

        /s/Kellen R. Scott