**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| H. Stuart Campbell, Jr. | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | No. 3:20-cv-00090 |
| | § | |
| Texas Tea Reclamation, LLC, *et al.* | § | |
|     *Defendants*. | § | |

## Plaintiff's Motion for Summary Judgment
## <u>as to Liability on His Claims for Breach of Contract</u>

Plaintiff H. Stuart Campbell, Jr., as Executor of the Estate of H. Stuart Campbell, Sr., files this motion for summary judgment as to liability on his claims for breach of contract because, as reflected by Defendant Texas Tea Reclamation, LLC's ("*TTR*") admissions, there is no genuine issue of material fact concerning its breaches of the twenty-eight promissory notes the parties entered into.

# Table of Contents

Table of Contents ................................................................................ ii

Table of Authorities ........................................................................... iii

Nature and Stage of the Proceedings ................................................... 1

Relevant Background .......................................................................... 2

    1.    Campbell, Sr. and TTR entered into twenty-eight promissory notes. ...................................................................... 2

    2.    TTR has ignored at least three demands for payment and failed to repay any of the principal, accrued interest, or fees and costs. ..... 3

Arguments and Authorities ................................................................. 4

    1.    Legal Standards. ...................................................................... 4

        1.1    Summary judgment is appropriate when, as here, there is no genuine dispute as to any material fact concerning TTR's breach of the promissory notes by failing to repay them. ................................................................................ 4

        1.2    TTR's admissions are conclusive and incontrovertible. ........... 5

    2.    TTR Breached the Promissory Notes. ..................................... 6

        2.1    TTR admits it entered into twenty-eight promissory notes with Campbell, Sr. ............................................................. 7

        2.2    TTR admits Campbell, Sr. performed under the notes by transferring the principal amounts to TTR. ............................ 9

        2.3    TTR breached the notes by failing to repay the principal, interest, and fees and costs after several demands to do so. .... 9

            2.3.1  TTR breached the notes by failing to repay the notes after receiving the May 25, 2019 demand. ................... 10

            2.3.2  TTR breached the notes by failing to repay the notes after receiving the December 12, 2019 demand. ........... 10

            2.3.3  TTR breached the notes by failing to repay the notes after receiving the May 11, 2020 demand. ................... 12

            2.3.4  TTR admits it has failed to make a payment of any kind before or after Campbell, Sr.'s death and Campbell, Jr.'s demands for payment. .......................... 16

Conclusion ....................................................................................... 17

Certificate of Service ......................................................................... 18

# Table of Authorities

**Page(s)**

## Cases

*Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C.,*
    930 F.2d 1117 (5th Cir. 1991) ................................................................. 6

*Avelo Mortg., LLC v. Infinity Capital, LLC,*
    366 S.W.3d 258 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ................... 14

*Barbier v. Barry,*
    345 S.W.2d 557 (Tex. App.—Dallas 1961, no writ) ................................... 15

*Branch Banking & Tr. Co. v. Glover Logistics, Inc.,*
    2020 WL 1923164 (W.D. Tex. 2020) ....................................................... 7

*In re Carney,*
    258 F.3d 415 (5th Cir. 2001) ............................................................ 5, 6

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ......................................................................... 5

*Chappell Hill Bank v. Lane Bank Equip Co.,*
    38 S.W.3d 237 (Tex. App.—Texarkana 2001, no pet.) ................................ 14

*DeClaire v. G & B Mcintosh Family Ltd. P'ship,*
    260 S.W.3d 34 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ....................... 7

*E. W. Bank v. 4G Metals, Inc.,*
    2016 WL 6895077 (S.D. Tex. 2016) ........................................................ 6

*Interstate Contracting Corp. v. City of Dallas,*
    Tex., 407 F.3d 708 (5th Cir. 2005) ....................................................... 14

*Little v. Liquid Air Corp.,*
    37 F.3d 1069 (5th Cir. 1994) ............................................................... 5

*Martinez v. Bally's La., Inc.,*
    244 F.3d 474 (5th Cir. 2001) ............................................................... 5

*Mullins v. TestAmerica, Inc.,*
    564 F.3d 386 (5th Cir. 2009) ............................................................... 7

*Occidental Neb. Fed. Sav. Bank v. East End Glass Co.,*
    773 S.W.2d 687 (Tex. App.–San Antonio 1989, no writ) .............................. 13

*Redland Ins. Co. v. Sw. Stainless, L.P.*,
    181 S.W.3d 509 (Tex. App.—Fort Worth 2005, no pet.) ................................. 13

*Tex. Util. Elec. Co. v. Aetna Cas. & Sur. Co.*,
    786 S.W.2d 792 (Tex. App.—Dallas 1990, writ denied) ................................. 14

*W. Power, Inc. v. TransAmerican Power Prods., Inc.*,
    316 F. Supp. 3d 979 (S.D. Tex. 2018) ................................................................. 6

*White v. ARCO/Polymers, Inc.*,
    720 F.2d 1391 (5th Cir. 1983) ............................................................................ 5

*Wiley v. State Farm Fire and Cas. Co.*,
    585 F.3d 206 (5th Cir. 2009) .............................................................................. 5

## Other Authorities

FED. R. CIV. P. 36(b) ................................................................................................... 6

FED. R. CIV. P. 56(a),(c) ........................................................................................... 4, 5

## Nature and Stage of the Proceedings

Plaintiff H. Stuart Campbell, Jr. is the executor of his father's estate, the Estate of H. Stuart Campbell, Sr. In that role, Campbell, Jr. initiated this action to collect on twenty-eight promissory notes that his father entered into with TTR. Campbell, Sr. loaned TTR $2.375 Million over twenty-eight installments, each of which the parties memorialized by signing a promissory note. The notes required Campbell, Sr. to make a demand for payment before receiving payment. Having made repeated demands on TTR to repay the notes, and TTR not paying Campbell, Sr. or his Estate any money whatsoever, the Court should grant summary judgment against TTR as to liability on Campbell, Jr.'s breach of contract claims.

Before Campbell, Jr. filed this suit on March 19, 2020, Campbell, Jr. made demands upon TTR to pay the notes. There is no dispute that TTR received Campbell, Jr.'s demands for payment. In fact, TTR responded to the demands, but TTR failed to make <u>any payment whatsoever</u>. TTR answered the Complaint and later filed an Amended Answer. [Doc. No. 10]. The Rule 16 conference occurred on July 15, 2020. The parties have exchanged initial disclosures, and Campbell, Jr. served requests for admissions and requests for production on TTR. TTR's admissions in its Amended Answer and its Rule 36 admissions plainly show there is no genuine issue of material fact as to TTR's liability for breach of the promissory notes. Summary judgment as to liability is appropriate and will expedite and streamline the remaining issues in the case.

## Relevant Background

TTR is an environmental company that was formed to remediate or reclaim hydrocarbon spills and waste. [Doc. No. 10] Am. Answer ¶ 9. Later, TTR shifted its focus to distributing a dust suppression product. *Exhibit A*, Campbell, Jr. Dec. ¶ 2.

John "Jack" Williams III and his wife, Dymra Henderson Williams, are TTR's managing members. *Exhibit A* ¶ 3. Jack Williams is Campbell, Sr.'s nephew. *Id.* In the summer of 2014, the Williamses convinced Campbell, Sr. to invest $2 Million in the company. *Id.* Campbell, Sr.'s capital account reflected his substantial investment. *Id.* Campbell, Sr.'s loans to TTR followed his initial investment.

### 1.    Campbell, Sr. and TTR entered into twenty-eight promissory notes.

On twenty-eight separate occasions from December of 2015 to August of 2018, Campbell, Sr. loaned TTR various amounts of money from $25,000 to $125,000. *Id.* ¶ 4; *Exhibit A—1,* Wire Transfer Confirmations. Campbell, Sr.'s loans totaled $2.375 Million. *Exhibit A* ¶ 4; *Exhibit A—1*. TTR memorialized Campbell, Sr.'s loans in twenty-eight promissory notes. *Exhibit A* ¶ 4; *Exhibit A-2*, Promissory Notes; [Doc. No. 10] Am. Answer ¶ 25.

Campbell, Sr.'s loans are accruing interest. *Exhibit A-2* ¶ 2; [Doc. No. 10] Am. Answer ¶¶ 25-26. Each note matured and, together with all accrued interest, "shall be due and payable on demand." *Exhibit A-2* ¶ 3; [Doc. No. 10] Am. Answer ¶ 27. If, as is the case here, Campbell, Sr. retained counsel to enforce the

promissory notes as a result of TTR's failure to repay them, TTR also agreed to immediately pay all attorney's fees and costs "as if such unpaid attorney's fees and costs had been added to [the] principal." *Exhibit A-2* ¶ 5; [Doc. No. 10] Am. Answer ¶ 28. TTR agreed time is of the essence with respect to every provision of the notes. *Exhibit A-2* ¶ 12; [Doc. No. 10] Am. Answer ¶ 29.

**2.     TTR has ignored at least three demands for payment and failed to repay any of the principal, accrued interest, or fees and costs.**

Campbell, Sr. passed away on December 28, 2018. *Exhibit A* ¶ 5; [Doc. No. 10] Am. Answer ¶ 32. As of Campbell, Sr.'s death, TTR had not made any payments to Campbell, Sr. to repay any of the twenty-eight promissory notes or the interest that was accruing. [Doc. No. 10] Am. Answer ¶ 36.

On May 25, 2019, Campbell, Jr. (through counsel) asked TTR to repay the notes and immediately settle TTR's outstanding indebtedness owed to the Estate. *Exhibit A* ¶ 6; *Exhibit A-3*, Vicky Windell Demand Letter. Campbell, Jr. notified TTR that he would pursue full payment of the notes. *Exhibit A* ¶ 6; *Exhibit A-3.*

By the end of that year, TTR still had not repaid the promissory notes or the accrued interest. *Exhibit A* ¶ 7. So, Campbell, Jr. (through counsel) made a second demand upon TTR for full payment of the notes plus interest within thirty days. *Exhibit A* ¶ 7; *Exhibit A-4*, David Lewis Demand Letter. TTR did not make any payments in response to Campbell, Jr.'s second demand for payment. *Exhibit A* ¶ 9.

Campbell, Jr. initiated this action to collect on the notes and (through counsel) made a third demand for payment upon TTR while this case has been pending. ***Exhibit A*** ¶ 10; ***Exhibit A-5***, Kellen Scott Demand Letter. TTR did not respond to Campbell, Jr.'s third demand, and TTR still has not paid any monies to Campbell, Jr. or the Estate as full or partial payment on the notes, accrued interest, or attorney's fees and costs that Campbell, Jr. has incurred to enforce the notes. ***Exhibit A*** ¶¶ 9-11.

### Evidence Supporting Summary Judgment as to Liability

Exhibit A:    Declaration of H. Stuart Campbell, Jr.

> Exhibit A-1: Wire transfer confirmations
> Exhibit A-2: Promissory Notes
> Exhibit A-3: Vicky Windell Demand Letter
> Exhibit A-4: David Lewis Demand Letter
> Exhibit A-5: Kellen Scott Demand Letter
> Exhibit A-6: Dymra Williams December 12, 2019 Email
> Exhibit A-7: Texas Tea Response to Lewis Demand Letter

Exhibit B:    Declaration of Kellen R. Scott

> Exhibit B-1: TTR Responses to Request for Admissions

### Arguments and Authorities

1. **Legal Standards**

    1.1 **Summary judgment is appropriate when, as here, there is no genuine dispute as to any material fact concerning TTR's breach of the promissory notes by failing to repay them.**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Parties asserting that a fact cannot be

genuinely disputed can rely on, among other things, declarations, documents, admissions, and other materials. FED. R. CIV. P. 56(c). As the movant, Campbell, Jr. bears the initial burden of "informing the district court of the basis for [his] motion" and identifying those portions of the record "which [he] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After Campbell, Jr. demonstrates the absence of a material fact issue, TTR must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "A fact is material only if its resolution would affect the outcome of the action, and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). TTR fails to carry its burden by creating "some metaphysical doubt as to the material facts" or by relying on conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little*, 37 F.3d at 1075.

### 1.2   TTR's admissions are conclusive and incontrovertible.

The Court can grant summary judgment based upon a party's admissions. *In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001); FED. R. CIV. P. 56(c). TTR's judicial admissions in its amended answer are formal concessions that are conclusively binding on TTR. *See White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983). TTR's admissions withdraw those facts from contention.

*Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). TTR's Rule 36 admissions are comparable to its judicial admissions in its amended answer. *See Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991); FED. R. CIV. P. 36(b).

A party's admissions "are conclusive as to the matters admitted, [and] they cannot be overcome at the summary judgement stage by contradictory affidavit testimony or other evidence in the summary judgment record." *In re Carney*, 258 F.3d at 420. In addition to not being controvertible, the Court cannot ignore TTR's admissions even if the Court finds TTR's other evidence is more credible. *Am. Auto. Ass'n (Inc.)*, 930 F.2d at 1120. For the pleading and discovery processes to be effective, Campbell Jr. "must be able to rely on the fact that matters admitted will not later be subject to challenge." *In re Carney*, 258 F.3d at 419.

## 2.    TTR Breached the Promissory Notes.

The Court should grant Campbell, Jr.'s motion for summary judgment as to liability on his claims for breach of contract because TTR has failed to pay the promissory notes, with interests and attorney's fees and costs, despite Campbell, Jr.'s repeated demands. Courts grant summary judgment as to liability on breach of contract claims. *E.g.*, *W. Power, Inc. v. TransAmerican Power Prods., Inc.*, 316 F. Supp. 3d 979, 996–97 (S.D. Tex. 2018) (Lake, J.); *E. W. Bank v. 4G Metals, Inc.*, 2016 WL 6895077, at *3 (S.D. Tex. 2016) (Atlas, J.). Moreover, Rule

56(g) allows the Court to enter an order that finds any material fact is not genuinely in dispute and treat that fact as established. FED. R. CIV. P. 56(g).

The promissory notes are governed by Texas law. ***Exhibit A-2*** ¶ 13. The elements of a breach of contract claim under Texas law are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009). Here, there is no genuine dispute as to any material fact concerning the first three elements of Campbell, Jr.'s contract claims, and Campbell, Jr. is entitled to judgment as a matter of law as to liability.

### 2.1  TTR admits it entered into twenty-eight promissory notes with Campbell, Sr.

Campbell, Sr. and TTR entered into twenty-eight contracts. ***Exhibit A-2***; [Doc. No. 10] Am. Answer ¶ 25. Promissory notes are valid contracts that evince an obligation to pay money. *See Branch Banking & Tr. Co. v. Glover Logistics, Inc.*, 2020 WL 1923164, at *2 (W.D. Tex. 2020); *DeClaire v. G & B Mcintosh Family Ltd. P'ship*, 260 S.W.3d 34, 44 (Tex. App.—Houston [1st Dist.] 2008, no pet.). There is no genuine dispute about the promissory notes being valid and enforceable contracts.

On January 2, 2018, the Williamses executed twenty-three of the twenty-eight promissory notes on behalf of TTR. ***Exhibit A-2***. On February 11, 2019, the Williamses executed the remaining five promissory notes on the behalf of TTR. *Id.*



***Exhibit A-2*** at 3; *see also* ***Exhibit B-1*** at RFA Nos. 7–10. The promissory notes contain all the terms of a valid contract in that they provide TTR's promises to pay Campbell, Sr. particular sums ranging from $25,000 to $125,000 for value that TTR received from Campbell, Sr. ***Exhibit A-2.***

| Dates of Promissory Notes and Principal Amounts | | | |
|---|---|---|---|
| 12/1/2015 $100,000 | 6/27/2016 $100,000 | 3/10/2017 $100,000 | 10/3/2017 $100,000 |
| 1/14/2016 $100,000 | 7/15/2016 $100,000 | 4/20/2017 $100,000 | 11/29/2017 $50,000 |
| 2/25/2016 $50,000 | 9/26/2016 $100,000 | 5/26/2017 $100,000 | 1/15/2018 $50,000 |
| 3/2/2016 $100,000 | 10/27/2016 $100,000 | 6/27/2017 $50,000 | 3/15/2018 $25,000 |
| 3/18/2016 $125,000 | 12/9/2016 $100,000 | 7/18/2017 $50,000 | 4/15/2018 $25,000 |
| 5/2/2016 $100,000 | 1/17/2017 $100,000 | 8/8/2017 $100,000 | 6/15/2018 $100,000 |
| 6/8/2016 $100,000 | 2/14/2017 $100,000 | 8/25/2017 $100,000 | 8/1/2018 $50,000 |
| Total: $2,375,000 | | | |

***Exhibit A-2.***

TTR admitted that Campbell, Sr. and TTR are parties to twenty-eight demand promissory notes that memorialized Campbell, Sr.'s loans to TTR. [Doc. No. 10] Am. Answer ¶ 38. TTR also admitted that it gave Campbell, Sr. twenty-eight interest-accruing promissory notes to evidence Campbell, Sr.'s loans. *Id.* ¶

25. Accordingly, there is no genuine issue as to the existence of the valid written contracts that form the basis of Campbell, Jr.'s breach of contract claims.

### 2.2 TTR admits Campbell, Sr. performed under the notes by transferring the principal amounts to TTR.

TTR further admits that Campbell, Sr. performed his obligations under the notes by transferring the principal amounts to TTR. [Doc. No. 10] Am. Answer ¶ 41. Moreover, the promissory notes themselves confirm that TTR entered into the notes for value that it received from Campbell, Sr. *Exhibit A-2* ¶ 1. Even if TTR had not admitted that Campbell, Sr. tendered performance by lending TTR the amounts acknowledged in the promissory notes, the wire transfer documentation also shows Campbell, Sr.'s performance under the notes. *Exhibit A ¶ 4*; *Exhibit A-1.* There is, therefore, no genuine dispute about Campbell, Sr.'s performance of his obligations under the notes.

### 2.3 TTR breached the notes by failing to repay the principal, interest, and fees and costs after several demands to do so.

Each promissory note matured and became payable in full, with accrued interest, when TTR was demanded to repay them. *Exhibit A-2* ¶ 3.

> 3.  Maturity Date.
>
>      The entire principal balance of this note, together with all accrued and unpaid interest, shall be due and payable on demand, unless otherwise prepaid in accordance with the terms of this note.

*Id.* (emphasis added). The notes do not require any specific language or content to be included in a demand for payment to trigger the right to repayment.

Campbell, Jr. has made no less than three demands upon TTR to repay the notes. **Exhibits A** ¶¶ 6, 7, 10;  **Exhibit A-3, Exhibit A-4, Exhibit A-5.** TTR has not repaid <u>any</u> principal, <u>any</u> interest, or <u>any</u> attorney's fees or costs. **Exhibit A** ¶ 11. TTR admits as much. [Doc. No. 10] Am. Answer ¶ 36.  Therefore, there is no genuine dispute that TTR has breached the notes by failing to repay the amounts it owes.

### 2.3.1 TTR breached the notes by failing to repay the notes after receiving the May 25, 2019 demand.

After Campbell, Sr. passed away, Campbell, Jr., as the executor of Campbell, Sr.'s estate, notified TTR that Campbell, Sr. passed away and demanded TTR to immediately repay its indebtedness owed to the Estate. **Exhibit A** ¶ 6; **Exhibit A-3** at 2. Campbell, Jr. reminded TTR that its debts owed to the Estate are in writing, well documented, and the Estate would pursue full payment from TTR on the notes. **Exhibit A-3** at 2.

TTR did not make any payment to Campbell Jr. or the Estate at any time and certainly not after Campbell, Jr. made his May 2019 demand. **Exhibit A** ¶ 6. As shown below, TTR admits it has not paid any money on the notes to Campbell, Sr., Campbell, Jr., or the estate before or after Campbell, Jr.'s May 2019 demand. **Exhibit B-1** at RFA Nos. 1-4.

### 2.3.2 TTR breached the notes by failing to repay the notes after receiving the December 12, 2019 demand.

Campbell, Jr. retained litigation counsel to make a second pre-suit demand on TTR after it failed to pay the notes following the Estate's May 2019 demand

for payment. ***Exhibit A*** ¶ 7. On December 12, 2019, Campbell, Jr.'s counsel sent TTR a "demand for full payment plus interest" on the notes. *Id*.; ***Exhibit A-4*** at 1. Campbell, Jr. pointed out that Paragraph 5 in the notes allows Campbell, Jr. to recover his attorney's fees and costs that he incurs if he retains counsel to enforce the notes. ***Exhibit A-4*** at 1; ***Exhibit A-2*** ¶ 5.

TTR admits that it actually received Campbell, Jr.'s December 2019 demand letter on the same day Campbell, Jr.'s litigation counsel sent it to TTR. ***Exhibit B-1*** at RFA Nos. 11, 12. In fact, one of TTR's managing members and signatory to the promissory notes, Dymra Williams, responded that she was "in receipt of your demand letter." ***Exhibit A*** ¶ 8; ***Exhibit A-6*** Dymra Williams December 12, 2019 Email at 1.



***Exhibit A-6*** at 1 (emphasis added). Furthermore, TTR formally responded to Campbell, Jr.'s second demand letter a few weeks later on January 9, 2020. ***Exhibit A*** ¶ 9; ***Exhibit A-7***, TTR Response to Lewis Demand Letter.

> Re:  Response to Demand for Payment of Indebtedness to the Estate of H. Stuart Campbell, Sr.
>
> Dear Mr. Lewis:
>
> This correspondence is sent to you in response to your demand letter dated December 12, 2019, sent to me and John E. Williams, III, as Managing Partners of Texas Tea Reclamation, LLC ("The Company"), on behalf of The Estate of H. Stuart Campbell, Sr. ("The Estate").

*Exhibit A-7* at 1 (emphasis added). TTR has since admitted that its January 9, 2020 letter was in response to Campbell, Jr.'s December 2019 demand letter. *Exhibit B-1* at RFA Nos. 13, 14.

Nevertheless, TTR did not make any payment to Campbell Jr. or the Estate after TTR received Campbell, Jr.'s December 2019 demand. *Exhibit A* ¶ 9. In fact, TTR admits it has not paid any money on the notes to Campbell, Sr., Campbell, Jr., or the Estate before or after Campbell, Jr.'s December 2019 demand. *Exhibit B-1* at RFA Nos. 1, 3.

### 2.3.3 TTR breached the notes by failing to repay the notes after receiving the May 11, 2020 demand.

Despite TTR actually receiving at least two written demands for payment (and formally responding to Campbell, Jr.'s second demand), Campbell, Jr.'s Texas counsel sent TTR a third demand for payment. *Exhibit A* ¶ 10; *Exhibit A-5*. Campbell, Jr. did so because TTR claimed in its amended answer—in a contrived effort to feign innocence and for the first time and five months after acknowledging its receipt of Campbell, Jr.'s second demand—that Campbell, Jr. "has never sent a letter via certified or registered mail, return receipt requested

giving notice of demand for payment." [Doc No. 10] Am. Answer ¶ 34. TTR's argument fails for several reasons.

First, TTR ignores the earlier demand that the Estate made on TTR on May 25, 2019. *See* ***Exhibit A-3***.

Second, the promissory notes do not require demands for payment to be sent by certified mail. The certified mail provision refers to notices, not demands for payment.



7.  Notices.

All notices required under or in connection with this note shall be delivered or sent by certified or registered mail, return receipt requested, postage prepaid, to the addresses set forth in Paragraph 1 hereof, or to such other address as any party may designate from time to time by notice to the others in the manner set forth herein. All notices shall be deemed to have been given or made either at the time of delivery thereof to an officer or employee or on the third business day following the time of mailing in the aforesaid manner.

***Exhibit A-2*** ¶ 7 (emphasis added). Because a demand for payment is not a notice, Campbell, Jr. was not required to send his demand for payment by certified mail.

Third, TTR received actual notice of Campbell, Jr.'s demand and contemporaneously acknowledged, and admitted during this litigation, that it actually received Campbell, Jr.'s demand. ***Exhibit B-1*** at RFA No. 11. Indeed, TTR responded to the demand. ***Exhibit A-7***. When a written notice demand is received, "the method by which the notice was delivered is immaterial." *Occidental Neb. Fed. Sav. Bank v. East End Glass Co.*, 773 S.W.2d 687, 689 (Tex. App.–San Antonio 1989, no writ); *See Redland Ins. Co. v. Sw. Stainless, L.P.,* 181

S.W.3d 509, 512–13 (Tex. App.—Fort Worth 2005, no pet.) (holding that because surety received actual notice, need of subcontractor to comport with statutory requirement that notice be sent certified mail was negated). Because TTR had actual notice of Campbell, Jr.'s demand for payment, Campbell, Jr.'s method of delivery is immaterial, and TTR's argument is unavailing.

Fourth, even if the Court finds that the notes require demand for payment to be sent by certified mail, Campbell, Jr.'s substantial compliance excuses any hypertechnical deviation from the note's provisions. Under Texas law, "[s]ubstantial compliance excuses deviations from a contract's provisions that do not severely impair the contractual provision's purpose and is the legal equivalent of compliance unless otherwise provided." *Interstate Contracting Corp. v. City of Dallas*, Tex., 407 F.3d 708, 727 (5th Cir. 2005); *see also Chappell Hill Bank v. Lane Bank Equip Co.*, 38 S.W.3d 237, 242 (Tex. App.—Texarkana 2001, no pet.) (stating that "[s]ubstantial compliance with the requirements of a contract is the legal equivalent of full compliance").

The purpose of a notice provision is "(1) to give those parties entitled to notice an opportunity to protect their interests and (2) to prevent surprise." *Avelo Mortg., LLC v. Infinity Capital, LLC*, 366 S.W.3d 258, 264 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Having actually received and responded to Campbell, Jr.'s demands for payment, TTR received an opportunity to protect its interests, and TTR cannot reasonably claim to be surprised by Campbell, Jr.'s attempt to collect on the notes. ***Exhibit B-1*** at RFA No. 11*; See, e.g., Tex. Util. Elec. Co. v.*

*Aetna Cas. & Sur. Co.*, 786 S.W.2d 792, 793–94 (Tex. App.—Dallas 1990, writ denied) (holding that defendant's notice of cancellation was effective and in substantial compliance with contract where plaintiff admitted that it had received the notice in its Mesquite office, even though the contract required that the notice be sent to the Allen office); *Barbier v. Barry*, 345 S.W.2d 557, 562 (Tex. App.—Dallas 1961, no writ) (finding that notice by letter was effective and in substantial compliance with the contract where defendant admitted it had received the notice, even though the notice was not sent by registered mail, as required by the contract).

Fifth, TTR waived any requirement for any formal presentment for payment when it executed the notes. *See **Exhibit A-2** ¶ 6(b). Under the promissory notes, TTR may become liable under the notes regardless of Campbell, Sr.'s compliance with any provision requiring presentment for payment, demand, or notice of demand. *Id.*

(b) Borrower and all endorsers, sureties, and guarantors hereby jointly and severally waive presentment for payment, demand, notice of demand, notice of nonpayment or dishonor, protest, notice of protest of this note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this note. They agree that each shall have unconditional liability without regard to the liability of the other party, and that they shall not be affected in any manner by any indulgence, extension of time, renewal, waiver, or modification granted or consented to by Lender. Borrower and all endorsers, sureties, and guarantors consent to any and all extensions of time, renewals, waivers or modifications that may be granted by Lender with respect to the payment or other provisions of this note, and to the release of any collateral or any part thereof, with or without substitution, and they agree that additional borrowers, endorsers, guarantors or sureties may become parties hereto without notice to them or affecting their liability hereunder.

*Id* (emphasis added). Thus, any argument with regard to lack of liability due to Campbell, Jr.'s failure to send his second demand by certified mail fails and is invalid as a matter of law.

TTR still did not make any payment to Campbell Jr. or the Estate after TTR received Campbell, Jr.'s May 2020 demand. ***Exhibit A*** ¶¶ 10–11. Indeed, TTR admits it has not paid any money on the notes to Campbell, Sr., Campbell, Jr., or the Estate at any time. ***Exhibit B-1*** at RFA Nos. 1-4.

### 2.3.4 TTR admits it has failed to make a payment of any kind before or after Campbell, Sr.'s death and Campbell, Jr.'s demands for payment.

TTR admits that each note matures on demand, and each note's principal and all accrued and unpaid interest is due and payable on demand. [Doc. No. 10] Am. Answer ¶¶ 27, 42. TTR admits that it has not repaid the promissory notes or any of the accrued interest or fees on the notes. *Id.* at ¶ 42. TTR further admits that it has not made a single payment on any of the promissory notes, nor has anyone else tendered payment to Campbell, Sr. on TTR's behalf. [Doc. No. 10] Am. Answer ¶ 36; ***Exhibit B-1*** at RFA Nos. 1, 2.  Likewise, TTR admits that it has not tendered any payment to Campbell, Jr., nor has anyone else tendered payment to Campbell, Jr. on TTR's behalf, despite receiving Campbell, Jr.'s three demand letters. ***Exhibit B-1*** at RFA Nos. 3, 4.

Accordingly, there is no genuine issue about TTR's breach of the promissory notes that form the basis of Campbell, Jr.'s breach of contract claims.

## Conclusion

TTR took $2.375 Million from Campbell, Sr. and entered into twenty-eight demand promissory notes with Campbell, Sr. TTR has refused to make even a single payment on the notes, despite Campbell, Jr.'s proper demands for payment. Campbell, Jr. has shown, largely through TTR's own admissions, that the promissory notes are valid contracts, that Campbell, Sr. complied with and performed his obligations under the promissory notes, and that TTR has breached the promissory notes by failing to repay them.  Accordingly, Campbell, Jr. asks the Court to narrow the issues that are legitimately in dispute, grant his motion for summary judgment as to liability on his breach of contract claims, and award Campbell, Jr. all other relief to which he is entitled.

Respectfully submitted,

**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, P.C.**

By: ___/s/Kellen R. Scott_____
    Kellen R. Scott
    Attorney-in-Charge
    Texas State Bar No. 24070579
    S.D. Tex. ID No. 1054528
    1200 Smith Street, Suite 1400
    Houston, Texas 77002
    Telephone: (713) 658-1818
    Facsimile: (713) 658-2553
    kellen.scott@chamberlainlaw.com

**Attorneys for Plaintiff**

**OF COUNSEL:**
Ryan Oliver Cantrell
Texas State Bar No. 24055259
S.D. Tex. ID No. 612310
**CHAMBERLAIN, HRDLICKA, WHITE,**
**    WILLIAMS & AUGHTRY, P.C.**
1200 Smith Street, Suite 1400
Houston, Texas 77002
Telephone: (713) 658-1818
Facsimile: (713) 658-2553
ryan.cantrell@chamberlainlaw.com

## Certificate of Service

I hereby certify that a correct copy of the foregoing has been forwarded to the following parties via electronic mail on October 22, 2020:

Jeffrey R. Elkin                          Andy Soto
Penn C. Huston                        MILLS SHIRLEY LLP
MOUERHUSTON PLLC            2228 Mechanic St., Ste. 400
349 Heights Blvd.                     Galveston, Texas 77550
Houston, Texas 77007

_____/s/Kellen R. Scott_____

18