

# TEXAS TEA RECLAMATION, LLC.
2600 SOUTH SHORE BLVD., SUITE 300, LEAGUE CITY, TEXAS 77546

January 9, 2020

Mr. David T. Lewis, Partner
Johnston Allison Hord, P.A.
1065 East Morehead Street
Charlotte, NC 28204
Certified Mail Return Receipt Requested
Article No. 7007 1490 0003 7590 5496
dlewis@jahlaw.com

Re: Response to Demand for Payment of Indebtedness to the Estate of H. Stuart Campbell, Sr.

Dear Mr. Lewis:

This correspondence is sent to you in response to your demand letter dated December 12, 2019, sent to me and John E. Williams, III, as Managing Partners of Texas Tea Reclamation, LLC ("The Company"), on behalf of The Estate of H. Stuart Campbell, Sr. ("The Estate").

As you have very clearly stated, you have been retained solely to collect any indebtedness owed to the Estate by The Company. Therefore, I will not be responding to your list of grievances, opinions, and/or your perspective on all other issues referenced in your correspondence.

You noted that the Estate hired appraisers to evaluate the assets and liabilities of the Estate. An appraiser is not a judge. An appraiser is not qualified to evaluate legal matters that may affect the valuation of assets or liabilities. If we are unable to reach an agreement as to the amount of indebtedness owed to the Estate, I will file a Motion For Declaratory Judgement in the Federal Southern District Court of Texas, Galveston Division, which would be the appropriate governing body to resolve all conflicts between the parties. My hopes are that The Company and The Estate will be able to reach a resolution as to the amount of the indebtedness owed as well as all other issues without filing a lawsuit.

It is obvious from your correspondence that you are not aware of all facts, nor have reviewed all documents submitted to Mr. Stuart Campbell Jr. ("Mr. Campbell"), as Executor of the Estate, and Ms. Windell. No distributions were made to any member of The Company. The two Managing Partners were paid Guaranteed Payments, which were

1

**EXHIBIT A-7**

agreed to by H. Stuart Campbell, Sr. The two Managing Partners filed tax returns which reflect the payments as guaranteed payments, not disbursements. The Managing Partners are not personally liable to The Estate.

Our position regarding the amount of the indebtedness owed is as follows. H. Stuart Campbell, Sr. requested, from the Managing Partners, the permission to take 100% of the losses of The Company every year of the Company's existence, except 2018 and 2019, instead of the 26% loss allotment proscribed the Operating Agreement. This variance from the Operating Agreement is noted on each and every K-1 filed by H. Stuart Campbell, Sr. with his personal tax returns. He initially used the Capital Contribution contributed by his late wife, Mildred Campbell, as a tax basis for taking the losses. In 2016, his capital account couldn't support 100% of the losses that he wanted permission to take. Initially, H. Stuart Campbell, Sr. had decided to contribute additional capital contributions, as needed, to keep The Company running. Then, on the advice of his advisors, he decided to categorize the additional capital contributions as loans so that he could receive reimbursement of the amounts faster than he would as a disbursement. He would also receive interest. Therefore, and is reflected on the original 2016 & 2017 K-1's for H. Stuart Campbell, Sr., he pledged the principal amount of the loans made at the time, as the tax basis for taking 100% of the losses. He didn't immediately convert the loans in hopes that The Company would make a profit and his resulting negative capital account could be brought to zero by disbursements. Unfortunately, for us all, he didn't live long enough to see The Company become profitable. At the time of his death, and taking into consideration that the losses taken, were taken in accordance with the Operating Agreement for 2018, Stuart Campbell, Sr.'s capital account had a negative carry over from 2017 of $1,844,693.00 and 26% of the 2018 losses were allocated to The Estate.

The Company was left with the following options with regard to the indebtedness of The Estate and of The Company:

1. The Company could file a claim with the Probate Court governing The Estate Matters to recover payment to bring the negative capital account to zero; or,
2. Convert the pledged principal amount of the loans to a capital contribution in accordance with the agreement made with H. Stuart Campbell, Sr. to cover the negative capital account balance.

Option Number 1 would have resulted in The Estate paying The Company the amount to bring the negative capital account to zero, then, The Company would pay the Estate the exact same amount to be applied to the principal and interest of the loans, leaving the remainder owing to the Estate. Option Number 2 would convert enough of the amount of principal owing on the pledged notes to capital contributions to bring the negative capital accounts to zero, leaving the principal and interest of the remaining notes owing to The Estate.

The above options were presented to Mr. Campbell repeatedly. Then, they were presented to Ms. Windell repeatedly. The only definitive response received was from Ms. Windell. The

summary of her response was that The Estate would not reimburse The Company to bring H. Stuart Campbell, Sr.'s negative capital account to zero. Therefore, Option 2 was her choice by default. It is against IRS regulations to take losses without a tax basis. This regulatory fact was obviously never understood by Mr. Campbell or Ms. Windell. In order to move forward with Company business, which includes filing tax returns, we converted the principal amount of the loans needed to bring the capital account to zero. We then asked for an agreement that the remaining amount of principal and interest after the conversion be agreed upon by all parties to be the indebtedness owed to The Estate. No response was ever received. No objection to the K-1 sent to the Estate was ever made. And, no resolution to ANY issue has ever been suggested by The Estate.

Now, we have received your demand made on behalf of Mr. Campbell and Ms. Windell, which again reflects their decision to collect on the entire principal amount and interest described on the promissory notes at issue, *instead of* taking the excess business losses requested by H. Stuart Campbell, Sr.

Using my best efforts to comply with this decision, I have done, and am doing, the following actions. As Managing Partner of The Company, I can legally correct and/or amend The Company tax returns for the past three years, to correct the mistake of allowing H. Stuart Campbell, Sr. permission to take 100% of the losses instead of the 26% to which he was entitled. I have asked The Company accountant to amend 2016, 2017 & 2018 Company tax returns to allocate the losses in accordance with the Operating Agreement.

The 2016 Company Tax Return has been amended and filed. A copy of The Estate's Amended 2016 K-1 is included with this correspondence. As you will note, in 2016 Stuart Campbell, Sr.'s capital account had a positive carry over. Although, the principal amount of the loans was pledged, as a tax basis in 2016, they were not needed. After allocation of 26% of the losses in 2016, H. Stuart Campbell, Sr. still has a positive carry over on the amended K-1. This amount will be carried over to the 2017 amended K-1 and applied as a tax basis for the losses taken. The Operating Agreement will be followed with regard to loss allocation.

When the 2017 and 2018 Company tax returns are amended and filed, I will forward the amended K-1's to you. The Company has always agreed that an indebtedness is owed to The Estate. The amount of indebtedness has been the only issue. It is the intention of The Company to first apply the positive carry over to provide the tax basis for losses taken in accordance with the Operating Agreement. Thereafter, if a negative carry over exists, The Company will convert the pledged principal of the existing loans at the time of the filing of the original tax return, beginning with the oldest loan made. The remaining principal and interest, accrued and accruing, as is reflected on the legally collectable and unconverted promissory notes, will be the amount of indebtedness owed to The Estate. We would like to begin making payments on the agreed amount of indebtedness on December 15th, 2020, over a ten-year period, with no prepayment penalty. These actions are being taken in an effort to cooperate with Mr. Campbell's and Ms. Windell's decision to attempt to collect on the entire debt reflected in the promissory notes given to H. Stuart Campbell, Sr., rather

than taking 100% of the business losses for 2016 & 2017, as previously requested by H. Stuart Campbell, Sr., in effort to protect and preserve his wealth by owing less taxes.

In the meantime, I hope you will forward the amended K-1 to Mr. Campbell with the direction to deliver it to The Estate's Accountant. I will forward the amended K-1's for 2017 and 2018 to you as I receive them. If you are unable to wait and wish to move forward with litigation, please save time and expense by filing your lawsuit in the Federal Southern District Court of Texas, Galveston Division. I will make a Motion for Change of Venue if any matter related to the issues in conflict between the parties is filed in any other court. In response to any, and all, of your alleged causes of actions, I will file a Motion for Declaratory Judgement as to all matters not agreed to by the parties, and for violation of both the Texas and Federal Fair Debt Collection Practices Acts. Every person is prohibited from applying business losses without a tax basis to their personal income tax debt. Upon the death of H. Stuart Campbell, Sr. a reconciliation had to be made, the issue of the negative carryover could no longer be pushed into the next year. He pledged the principal of the loan amounts as a tax basis, this pledge was reflected on his K-1's. He filed the K-1's with his personal tax returns and enjoyed the benefit. If it were possible to claim imaginary business losses, business losses without a tax basis, no one would ever owe income taxes.

Please let me know if you have any questions. I will be looking forward to your response. Receiving a response of any kind, will be a welcome change and should aide in moving the parties forward to a resolution of the matter that you have been retained to handle and resolve, as well as all other matters.

Sincerely,

*Dymra Williams*

Dymra Williams
Managing Partner & General Counsel
Texas Tea Reclamation, LLC

███████████ direct line and cell

4

| | | |
|---|---|---|
| ☐ Final K-1 | ☒ Amended K-1 | 651113 OMB No. 1545-0123 |

**Schedule K-1 (Form 1065)**    **2016**
For calendar year 2016, or tax year beginning _____, 2016 ending _____.

Department of the Treasury
Internal Revenue Service

### Partner's Share of Income, Deductions, Credits, etc. ▶ See separate Instructions.

### Part III — Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | | |
|---|---|---|---|---|
| 1 | Ordinary business income (loss) | | 15 | Credits |
| 2 | Net rental real estate income (loss) | | | |
| 3 | Other net rental income (loss) | | 16 | Foreign transactions |
| 4 | Guaranteed payments | | | |
| 5 | Interest income | | | |
| 6a | Ordinary dividends | | | |
| 6b | Qualified dividends | | | |
| 7 | Royalties | | | |
| 8 | Net short-term capital gain (loss) | | | |
| 9a | Net long-term capital gain (loss) | | 17 | Alternative minimum tax (AMT) items |
| 9b | Collectibles (28%) gain (loss) | | | |
| 9c | Unrecaptured section 1250 gain | | | |
| 10 | Net section 1231 gain (loss) | | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | | C | |
| | | | 19 | Distributions |
| 12 | Section 179 deduction | | | |
| 13 | Other deductions | | 20 | Other information |
| | | | A | |
| 14 | Self-employment earnings (loss) | | | |

### Part I — Information About the Partnership

**A** Partnership's employer identification number
47-1390441

**B** Partnership's name, address, city, state, and ZIP code
TEXAS TEA RECLAMATION LLC
2600 SOUTH SHORE BLVD, STE 300
LEAGUE CITY, TX 77573

**C** IRS Center where partnership filed return
OGDEN, UT

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II — Information About the Partner

**E** Partner's identifying number

**F** Partner's name, address, city, state, and ZIP code

H STUART CAMPBELL

**G** ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner? ........ INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | | |
| Loss | | |
| Capital | | |

**K** Partner's share of liabilities at year end:
Nonrecourse .......................... $ ____
Qualified nonrecourse financing ........ $ ____
Recourse ............................. $ ____

**L** Partner's capital account analysis:
Beginning capital account .......... $ ____
Capital contributed during the year .. $ ____
Current year increase (decrease) .... $ ____
Withdrawals & distributions ........ $ ____
Ending capital account ............. $ ____

☒ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No
If 'Yes', attach statement (see instructions)

*See attached statement for additional information.

FOR IRS USE ONLY

BAA For Paperwork Reduction Act Notice, see Instructions for Form 1065.    Schedule K-1 (Form 1065) 2016
PTPA0312L 08/26/16

PARTNER 3

| 2016 | EXPLANATION OF CHANGES ON AMENDED RETURN | PAGE 1 |
|---|---|---|
| CLIENT 17347 | TEXAS TEA RECLAMATION LLC | 47-1390441 |
| 12/19/19 | | 12:38PM |

EXPLANATION OF CHANGES

TAX RETURN IS BEING AMENDED TO ALLOCATE PROFITS AND LOSSES ACCORDING TO OPERATING AGREEMENT