United States District Court
Southern District of Texas
**ENTERED**
May 06, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| STUART CAMPBELL, JR., *in his capacity as Executor of the Estate of H. Stuart Campbell, Sr.*, | § § § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:20-CV-00090 |
| | § | |
| TEXAS TEA RECLAMATION, LLC, ET AL., | § § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM AND RECOMMENDATION**

Currently before me are two motions to dismiss. First, Defendant Texas Tea Reclamation, LLC ("Texas Tea") has filed a Motion to Dismiss Counts 30–33, 36, and 37 of Plaintiff's Second Amended Complaint. *See* Dkt. 31. Defendants Dymra Henderson Williams and John E. Williams (collectively, "the Williamses") have joined in Texas Tea's motion to dismiss. *See* Dkt. 32. Second, the Williamses have filed a Motion to Dismiss Counts 29 and 35 of Plaintiff's Second Amended Complaint. *See* Dkt. 33. I have carefully reviewed the Second Amended Complaint, the briefing related to the motions to dismiss, and the applicable law. For the reasons set forth below, I recommend that Texas Tea's motion to dismiss be **GRANTED** and that the Williamses' motion to dismiss be **GRANTED** in part and **DENIED** in part.

## BACKGROUND

H. Stuart Campbell, Sr. ("Campbell, Sr.") was a successful businessman who lived in North Carolina. In July 2014, according to the Second Amended Complaint, Campbell, Sr.'s nephew, John E. Williams, and John's wife, Dymra Henderson Williams, pitched an investment concept to Campbell, Sr. The Williamses had formed Texas Tea Reclamation, LLC ("Texas Tea") as an environmental and oil field services company offering to reclaim and remediate hydrocarbons from oil mud, and they encouraged Campbell, Sr. to invest. On July 31, 2014, Campbell, Sr. put $2 million in Texas Tea. In return, Campbell, Sr. allegedly received a membership interest in Texas Tea.

In addition to his $2 million initial investment in Texas Tea, Campbell, Sr. agreed to enter into a total of 28 demand promissory notes with Texas Tea for an aggregate amount of $2.375 million. These notes were executed between December 2015 and August 2018 and provided Texas Tea with additional capital.

After Campbell, Sr. died in December 2018, his estate demanded repayment of the promissory notes. When Texas Tea failed to pay, H. Stuart Campbell, Jr. ("Campbell, Jr."), as the executor of the Estate of H. Stuart Campbell, Sr., filed this lawsuit. The original lawsuit asserted one cause of action: breach of contract. A Second Amended Complaint, filed on September 9, 2020 asserts a laundry list of claims.

Texas Tea has moved to dismiss Counts 30 through 33 of the Second Amended Complaint, which allege that Texas Tea and the Williamses violated the

Texas Uniform Fraudulent Transfer Act. Texas Tea has also moved to dismiss Counts 36 and 37 of the Second Amended Complaint, which allege that Texas Tea and the Williamses committed fraud and made negligent misrepresentations to Campbell, Sr. In addition to joining Texas Tea's motion to dismiss those claims, the Williamses have filed a separate motion to dismiss Counts 29 and 35 of the Second Amended Complaint, which allege that the Williamses breached fiduciary duties owed to Campbell, Sr. and unjustly enriched themselves. The Second Amended Complaint's allegations of breach of contract against Texas Tea (Counts one through 28) and return of distributions against the Williamses (Count 34) are not addressed in the motions to dismiss.

## RULE 12(b)(6) STANDARD

To bring a lawsuit in federal court, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Supreme Court has construed that rule as requiring the plaintiff to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Defendants may challenge the sufficiency of the plaintiff's complaint by filing a motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *See Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quotation omitted).

In considering a motion to dismiss, a district court must accept the factual allegations in the live complaint as true and construe the facts in the light most favorable to the plaintiff. *See Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017). The district "court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## DISCUSSION

### A.   TEXAS TEA'S MOTION TO DISMISS

Texas Tea's motion to dismiss seeks to eliminate the fraud, negligent misrepresentation, and fraudulent transfer claims raised in the Second Amended Complaint. For the following reasons, I recommend that Texas Tea's motion be granted and that the fraud, negligent misrepresentation, and fraudulent transfer claims be dismissed.

> **1. Campbell, Jr.'s fraud (Count 36) and negligent misrepresentation (Count 37) claims should be dismissed for failing to satisfy the pleading requirements of Rule 9(b).**

When a complaint alleges fraud, the pleading standard is heightened to require a claim that "state[s] with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). To satisfy this pleading standard, the Fifth Circuit has held that the allegations must include "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the

misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber*, 343 F.3d 719, 724 (5th Cir. 2003) (quotation omitted). Put another way, Rule 9(b) requires the complaint to lay out the "who, what, when, where, why, and how the false statements were made and to whom they were made." *Askanase v. Fatjo*, 130 F.3d 657, 676 (5th Cir. 1997). *See also Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 117 (5th Cir. 2019) (same). As one district court has explained:

> The rule has three purposes. First, it ensures that the allegations are specific enough to inform a defendant of the act of which the plaintiff complains and to enable him to prepare an effective response and defense. Second, it eliminates those complaints filed as a pretext for discovery of unknown wrongs. The Second Circuit explained: "A complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred; it should seek to redress a wrong, not to find one." *Segal v. Gordon*, 467 F.2d 602, 607–08 (2d Cir. 1972). A plaintiff in a non-9(b) suit can sue now and discover later what his claim is, but a Rule 9(b) claimant must know what his claim is when he files it. Third, Rule 9(b) seeks to protect defendants from unfounded charges of wrongdoing which injure their reputations and goodwill.

*In re Commonwealth Oil/Tesoro Petroleum Corp. Sec. Litig.*, 467 F. Supp. 227, 250 (W.D. Tex. 1979) (cleaned up). "The Fifth Circuit applies Rule 9(b) to fraud complaints with bite and without apology, while recognizing that Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading." *Carlton v. Cannon*, 184 F. Supp. 3d 428, 456 (S.D. Tex. 2016) (quotation omitted). Rule 9(b) "requires only simple, concise, and direct allegations of the circumstances constituting fraud, which after *Twombly* must make relief plausible, not merely conceivable, when taken as true." *Id.* (quotation omitted).

Rule 9(b)'s heightened pleading requirements apply to negligent misrepresentation claims when the fraud and negligent misrepresentation claims "are based on the same set of alleged facts." *Benchmark*, 343 F.3d at 723. Failure to plead fraud and those negligent misrepresentation claims subject to Rule 9(b) with specificity can result in dismissal under Rule 12(b)(6) for failure to state a claim. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996) ("We treat a dismissal for failure to plead fraud with particularity under Rule 9(b) as a dismissal for failure to state a claim upon which relief can be granted.").

Campbell, Jr. alleges that the Williamses committed fraud and negligent misrepresentation by making material misrepresentations to, and withholding material information from, Campbell, Sr. to induce him into loaning substantial sums of money to their company, Texas Tea. The lawsuit alleges that the Williamses told Campbell, Sr. that Texas Tea would use the loan proceeds on legitimate business expenses, despite knowing full well that they had no intention of using the loaned funds to operate Texas Tea. According to the Second Amended Complaint, the Williamses used the loans from Campbell, Sr. to personally enrich themselves by siphoning off large sums from Texas Tea to pay off their personal indebtedness to the Internal Revenue Service, purchase an expensive home, and otherwise line their pockets.

Turning to the pleading standard, I can readily ascertain that Campbell, Jr. alleges that Texas Tea and the Williamses (the "who") made misrepresentations that they would use loan proceeds on legitimate business expenses of Texas Tea

(the "what") in order to further their personal financial interests (the "why"). Missing from the Second Amended Complaint are the other required elements of a fraud claim under Rule 9(b): the "when," "where," and "how."

Let's start with the "when." The Second Amended Complaint states that "[b]eginning in late-2015 and continuing through the first half of 2018, Jack and Dymra Williams approached Campbell, Sr. for more money." Dkt. 30 at 28. This language certainly implies that the purported misstatements and omissions at issue occurred between late-2015 through the first half of 2018—a span of roughly two-and-a-half to three years. This is not particular enough. *See U.S. ex rel. Gage v. Davis S.R. Aviation, L.L.C.*, 623 F. App'x 622, 627 (5th Cir. 2015) (concluding that an allegation "that defendants submitted nearly $4 million of false invoices to the government between 2009 and 2011" was "not specific enough to comply with Rule 9(b)"); *Guerrero v. Bank of Am. N.A.*, No. H-17-239, 2017 WL 2876504, at *2 (S.D. Tex. July 6, 2017) (Rule 9(b) not met where plaintiff alleged misrepresentations were made on "numerous occasions during 2010–2016"); *Gregory v. Hous. Indep. Sch. Dist.*, CV H-14-2768, 2016 WL 5661701, at *5 (S.D. Tex. Sept. 30, 2016) (allegation that "the fraud occurred over a course of years spanning from at least 2005 to 2013" insufficient under Rule 9(b)); *Meyers v. Textron Fin. Corp.*, No. 4:11-cv-624-A, 2011 WL 4590796, at *2 (N.D. Tex. Oct. 4, 2011) (dismissing fraud claim because "[e]xcept for unacceptable general allegations such as 'in September 2008' or '[i]n early 2009,' . . . the 'when' element of particularity is absent from plaintiffs' allegations"); *U.S. ex rel. Lam v. Tenet*

*Healthcare Corp.*, 481 F. Supp. 2d 673, 688 (W.D. Tex. 2006) (alleging only the year in which fraud occurred was "insufficient to meet Rule 9(b)'s requirements to plead the 'when' with specificity"). Because Campbell, Jr. has failed to specify "when" the alleged misrepresentations or omissions took place, Rule 9(b)'s heightened pleading requirements have not been met, and his fraud and negligent misrepresentation claims should be dismissed for failure to state a claim.

Even assuming Campbell, Jr. sufficiently pled the "when," the "where" and the "how" are left largely unanswered. The Second Amended Complaint provides only a broad generalization that Texas Tea and the Williamses allegedly made misrepresentations to Campbell, Sr. and failed to disclose certain information to him. The problem is that Campbell, Jr. has not pled precisely "where" or "how" Texas Tea or the Williamses made the purported misstatements. Were the alleged misrepresentations made during an in-person meeting? If so, where was that meeting conducted? A home? An office? Somewhere else? Did Texas Tea and the Williamses make misstatements or fail to disclose information during a telephone call? An email exchange? A text message? A hand-written letter? A Zoom videoconference?

These are not minor omissions. The underlying purpose of Rule 9(b)'s particularity requirement is to notify Texas Tea and the Williamses of the precise misconduct with which they are charged and to protect them against spurious allegations of fraudulent conduct. *See U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 191 (5th Cir. 2009) (interpreting Rule 9(b) as preventing "the filing of baseless

claims as a pretext to gain access to a 'fishing expedition'" and requiring complaints to be sufficiently particular to "limit[] any 'fishing' to a small pond that is either stocked or dead"). A heightened pleading standard is particularly appropriate in this case because the allegedly wronged individual, Campbell, Sr., is no longer around to describe "where" and "how" the alleged misrepresentations and omissions occurred.

Cutting to the chase, Campbell, Jr. has not sufficiently pled the "where" or "how." As a result, the fraud and negligent misrepresentation claims must be dismissed. *See Albracht v. Indem. Ins. Co. of N. Am.*, No. 2:19-CV-72-Z-BR, 2019 WL 7040333, at *4 (N.D. Tex. Nov. 20, 2019) (dismissing lawsuit for failing to identify "where" the alleged misrepresentations occurred when "the Amended Complaint does not plead facts showing whether [defendant's] misrepresentations were made in person at the [plaintiff's] house or another location, in an email, in a text message, in a letter, or by phone"); *Laura Johnston Family Props., Ltd. v. Allen Eng'g Contractor, Inc.*, No. 3:16-CV-03378-M, 2017 WL 6459529, at *3 (N.D. Tex. Dec. 18, 2017) (holding that fraud claims did not satisfy Rule 9(b) pleading standards where "it [was] not apparent where or when . . . such representation" was made); *Dylon v. Bank of Am., N.A.*, No. 3:17-CV-134-M-BN, 2017 WL 2266938, at *10 (N.D. Tex. Apr. 28, 2017) (dismissing fraud claims under Rule 9(b) when plaintiff did not plead "precisely where" the misrepresentation was

made, "whether that was in a specific office, or made in email and phone conversations" (quotation omitted)).[1]

Campbell, Jr. argues that the pleading standard should be relaxed when the facts relating to the fraud are particularly within the perpetrators' own knowledge and control. Although Campbell, Jr. accurately states the prevailing legal standard provided by the Fifth Circuit, Rule 9(b) still requires, at a bare minimum, for "the who, what, when, where, and how to be laid out." *Benchmark*, 343 F.3d at 724 (quotation omitted). This is where Campbell comes up short. His fraud and negligent misrepresentation claims should be dismissed.

### 2. Fraudulent Transfers (Counts 30–33)

The Second Amended Complaint asserts fraudulent transfer claims against Texas Tea and the Williamses under four separate sections of the Texas Uniform Fraudulent Transfer Act. *See* Dkt. 30 at 20 (alleging violations of TEX. BUS. & COM. CODE §§ 24.005(a)(1)–(2), 24.006(a)–(b)).

Section 24.005(a) provides:

(a)     A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

---

[1] In addition to seeking dismissal under Rule 9(b), Texas Tea argues that the operative complaint has failed to allege facts that establish or raise an inference of fraudulent intent by Texas Tea or reliance by Campbell, Sr. Because I have concluded that the Second Amended Complaint has failed to meet Rule 9(b)'s "when," "where," and "how" requirements, I need not address Texas Tea's additional arguments for dismissal.

(1)    with an actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2)    without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

    (a)    was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

    (b)    intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor''s ability to pay as they became due.

*Id.* at § 24.005(a).

Section 24.006 provides:

(a)    A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(b)    A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

*Id.* at § 24.006.

I will address each claim individually.

**Section 24.005(a)(1)**: Texas law makes it unlawful for a debtor to make transfers or incur obligations "with *actual intent* to hinder, delay, or defraud any creditor." TEX. BUS. & COM. CODE § 24.005(a)(1) (emphasis added). Although the

Fifth Circuit has yet to decide whether actual fraudulent transfer claims under § 24.005(a)(1) are subject to Rule 9(b)'s heightened pleading standard, *see Matter of Life*, 926 F.3d at 118, an essential element of an actual fraudulent transfer claim under § 24.005(a)(1) is a fraudulent state of mind. *See id.* at 117 ("[T]he elements of an actual fraudulent transfer under [§ 24.005(a)(1)] are: (1) a creditor; (2) a debtor; (3) the debtor transferred assets shortly before or after the creditor's claim arose; (4) with actual intent to hinder, delay, or defraud any of the debtor's creditors."). Because Rule 9(b) applies to "all averments of fraud," *see* FED. R. CIV. P. 9(b), I believe it follows that a plaintiff seeking to recover under § 24.005(a)(1) must satisfy Rule 9(b). *See VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 653 (N.D. Tex. 2020) (applying Rule 9(b)'s pleading requirement to a claim for actual fraudulent transfers under § 24.005(a)(1) because such a claim requires a showing of fraudulent intent); *In re Northstar Offshore Grp.*, 616 B.R. 695, 733 (Bankr. S.D. Tex. 2020) (applying Rule 9(b)'s heightened pleading standard because "fraud is an essential element" of an actual fraudulent transfer claim).

As already noted, Rule 9(b) requires a plaintiff to allege the "who, what, when, where, and why as to the fraudulent conduct." *Matter of Life*, 926 F.3d at 117. For each alleged violation of § 24.005(a)(1), then, Campbell, Jr. must provide the name of the transferor, the name of the initial transferee, the date of the transfer, the amount or value of the transfer, and the consideration paid, if any, for the transfer. *See id.* at 119 (finding a complaint satisfied Rule 9(b) because it "sets out the details of the allegedly fraudulent transfers—including the transferor,

transferees, amounts, and time period"). *See also In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 733 (Bankr. S.D.N.Y. 2008) ("[A]llegations that a debtor made an aggregate amount or series of cash or other transfers over a period of time, without further particularization, are insufficient to state an intentional fraudulent transfer claim.").

Applying that rubric here, the Second Amended Complaint fails to state a claim under § 24.005(a)(1) because it is devoid of any factual allegations concerning the dollar amount of any fraudulent transfer (the "what") or the specific date of any fraudulent transfer (the "when"). *See Wujin Nanxiashu Secant Factory v. Ti-Well Int'l Corp.*, No. 01CIV8871 (JCF), 2002 WL 1144903, at *4 (S.D.N.Y. May 29, 2002) (dismissing actual fraudulent transfer claim that failed to identify the property that was transferred, when the transfers occurred and to whom the transfers were made). Even Campbell, Jr. must acknowledge that the operative complaint merely alleges that the fraudulent transfers took place sometime in 2015, 2016, 2017, and 2018. This four-year range is not specific or precise enough to pass muster under Rule 9(b).

**Sections 24.005(a)(2) and 24.006(a)**: In addition to an actual fraudulent transfer claim, Campbell, Jr. also asserts constructive fraudulent transfer claims against Texas Tea and the Williamses under §§ 24.005(a)(2) and 24.006(a). Unlike claims for actual fraudulent transfer, constructive fraudulent transfer claims are not subject to Rule 9(b)'s heightened pleading standard because constructive fraudulent transfer focuses on the "debtor's financial condition and

13

the sufficiency of the consideration," not an actual intent to defraud. *In re Think3, Inc.*, 529 B.R. 147, 197 (Bankr. W.D. Tex. 2015). For this reason, "[d]istrict courts in the Fifth Circuit have suggested that constructive fraudulent transfer claims are only subject to Rule 8(a)['s]" notice pleading standard. *Matter of Life*, 926 F.3d at 120. To satisfy the Rule 8(a) pleading standard, Campbell, Jr. must provide "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To state a claim for constructive fraudulent transfer under Texas law, Campbell, Jr. "must plead facts demonstrating: (1) a lack of reasonably equivalent value for the transfer; and (2) the transferor was 'financially vulnerable' or insolvent at the time of the transaction." *Matter of Life*, 926 F.3d at 120.

Texas Tea argues that Campbell, Jr.'s constructive fraudulent transfer claims should be dismissed because he fails to establish that transfers were made without an exchange of "reasonably equivalent value." I agree. The live pleading repeatedly states that Texas Tea and the Williamses made transfers "without receiving reasonably equivalent value." Dkt. 30 at 21, 24, and 25. But this cursory language is insufficient to state a claim under Rule 8(a). Campbell, Jr. must plead specific facts in support of his claim, not bare, unsupported allegations. *See U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not establish facial plausibility." (cleaned up)). Merely repeating the words "without receiving reasonably equivalent value" over and over and over does not survive a motion to dismiss under Rule 12(b)(6). *See Twombly*, 550 U.S. at 555.

("A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (cleaned up)). Because Campbell, Jr. offers no factual allegations supporting his conclusory assertions that Texas Tea and the Williamses made the transfers at issue without receiving reasonably equivalent value in exchange, his constructive fraudulent transfer claims under §§ 24.005(a)(2) and 24.006(a) fail, and should be dismissed.

**Section 24.006(b)**: The fourth and final fraudulent transfer claim Campbell, Jr. raises in the Second Amended Complaint is brought under § 24.006(b). A cause of action under this section must be brought "within one year after the transfer was made." TEX. BUS. & COM. CODE § 24.010(a)(3). Important to this discussion, the Texas Supreme Court characterizes § 24.010(a)(3) as a statute of repose, rather than a statute of limitations. *See Nathan v. Whittington*, 408 S.W.3d 870, 876 (Tex. 2013). The distinction between a statute of repose and a statute of limitations is important.

> Statutes of repose typically provide a definitive date beyond which an action cannot be filed. Unlike traditional limitations provisions, which begin running upon accrual of a cause of action, a statute of repose runs from a specified date without regard to accrual of any cause of action. Repose then differs from limitations in that repose not only cuts off rights of action after they accrue, but can cut off rights of action before they accrue. And while statutes of limitations operate procedurally to bar the enforcement of a right, a statute of repose takes away the right altogether, creating a substantive right to be free of liability after a specified time. Thus, the purpose of a statute of repose is to provide absolute protection to certain parties from the burden of indefinite potential liability.

*Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 866 (Tex. 2009) (cleaned up).

According to the Second Amended Complaint, Campbell, Jr. provided loan proceeds to Texas Tea between "December of 2015 until August of 2018." Dkt. 30 at 6. The allegedly constructive fraudulent transfer date occurred "immediately" thereafter. *Id.* at 23. Given the one-year statute of repose, Campbell, Jr. thus had to file his constructive fraudulent transfer claim under § 24.006(b) by, at latest, August 2019. He did not do so. This lawsuit was not filed until March 19, 2020, roughly six months too late. Because Campbell, Jr.'s fraudulent transfer claim was not filed within one year from the date of transfer, his § 24.006(b) claim must be dismissed.

## B.   WILLIAMSES' MOTION TO DISMISS

The Williamses' motion to dismiss requests that the breach of fiduciary duty and unjust enrichment claims be shelved. For the following reasons, I recommend that the motion to dismiss the breach of fiduciary duty claim be denied and the motion to dismiss the unjust enrichment claim be granted.

### 1.   The Williamses' motion to dismiss the breach of fiduciary duty claim (Count 29) should be denied because Campbell, Jr. may be able to show the existence of an informal fiduciary relationship.

To succeed on a breach of fiduciary duty claim, Texas law requires "(1) a fiduciary relationship between the plaintiff and defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or

benefit to the defendant as a result of the defendant's breach." *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied.). Texas law views a fiduciary relationship as "an extraordinary one [that] will not be lightly created." *Chapman Children's Tr. v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 439 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). There are two types of fiduciary relationships: (1) a "formal" relationship where the duty arises as a matter of law (such as attorney-client, principal-agent, trustee-beneficiary, or partners in a partnership); and (2) an "informal" relationship where the duty arises from a moral, social, domestic, or personal relationship called a "confidential" relationship. *See id.* The Second Amended Complaint alleges that the Williamses breached both formal and informal fiduciary duties.

As far as a formal fiduciary relationship is concerned, Campbell, Jr. claims that the Williamses (as managing members of Texas Tea, an LLC) owed his father (another member of Texas Tea) fiduciary duties as a matter of law. The Texas statute governing LLCs does not directly address whether members of an LLC owe duties to one another. Rather, the Texas Business Organizations Code simply provides that "[t]he company agreement of a limited liability company may expand or restrict any duties, including fiduciary duties, and related liabilities that a member, manager, officer, or other person has to the company or to a member or manager of the company." Tex. Bus. Org. Code § 101.401. Based on my research, I have been unable to identify a single case at either the state or federal level that holds that an LLC's managing member owes fiduciary duties to other members as

a matter of Texas law. *See Ent. Merch. Tech., L.L.C. v. Houchin*, 720 F. Supp. 2d 792, 797 (N.D. Tex. 2010) ("No Texas court has held that fiduciary duties exist between members of a limited liability company as a matter of law."); *In re Hardee*, No. 11-60242, 2013 WL 1084494, at *10 (Bankr. E.D. Tex. Mar. 14, 2013) ("It is widely recognized that there is no formal fiduciary relationship created as a matter of Texas law between members of a limited liability company." (quotation omitted)). For what it's worth, Texas appears to have charted a different path in this area of the law, with most states imposing fiduciary duties on members of an LLC under both statutes and common law. *See* Debra Hatter & Rikiya Thomas, *Swimming in Unsettled Waters: Fiduciary Duties and Limited Liability Companies*, 49 HOUS. LAW. 22, 24 (2011) ("It is well-settled within most jurisdictions that fiduciary duties are owed by managers in a manager-managed LLC and members in a member-managed LLC.").

The lack of a formal fiduciary relationship between members of an LLC does not, however, end the inquiry. There still may be an informal fiduciary relationship, characterized by a close personal relationship of trust and confidence between the parties. *See Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 220 (Tex. 2019) (noting that an informal fiduciary relationship may be formed "from a moral, social, domestic or purely personal relationship of trust and confidence" (quotation omitted)).

The Second Amended Complaint asserts that the Williamses owed Campbell, Sr. fiduciary duties because of their close familial ties and longstanding

relationship. According to the live pleading, Campbell, Sr. vested "his trust and confidence in the Williamses to properly and lawfully manage his investments and Texas Tea's business operations." Dkt. 30 at 18. In their motion to dismiss, the Williamses contend that the Second Amended Complaint fails to plead sufficient facts to support an informal fiduciary relationship. Determining whether an informal fiduciary relationship exists usually turns on the unique circumstances of a particular case. *See ARA Aut. Grp. v. Cent. Garage, Inc.*, 124 F.3d 720, 723 (5th Cir. 1997). As a result, the existence of an informal fiduciary relationship is "usually a fact intensive inquiry," *id.*, which cannot be resolved on a Rule 12(b)(6) motion to dismiss. *See Gadin v. Societe Captrade*, No. 08-CV-3773, 2009 WL 1704049, at *3 (S.D. Tex. June 17, 2009) (denying motion to dismiss based on whether member of LLC owes fiduciary duty to another member "[b]ecause the existence of a fiduciary duty is a fact-specific inquiry that takes into account the contract governing the relationship as well as the particularities of the relationships between the parties").

I have carefully reviewed the Second Amended Complaint. The allegations that an informal fiduciary duty existed between the Williamses and Campbell, Sr. are more than sufficient, at this early stage of the proceedings, to allow the fiduciary duty claim to proceed. *See In re Express Scripts, Inc., PBM Litig.*, 522 F. Supp. 2d 1132, 1147 (E.D. Mo. 2007) ("The existence of a fiduciary duty depends on the facts of a particular relationship and thus is not usually dismissed in a 12(b)(6) motion." (cleaned up)); *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*,

No. 08CIV9116(PGG), 2009 WL 321222, at *9 (S.D.N.Y. Feb. 9, 2009) ("Because the inquiry as to whether a fiduciary relationship exists is necessarily fact specific, a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)." (cleaned up)); *Cleveland Constr., Inc. v. Centex Constr. Co.*, No. 3:03-CV-1437, 2004 WL 594093, at *1 (N.D. Tex. Mar. 24, 2004) (denying Rule 12(b)(6) motion because "whether a relationship gives rise to a fiduciary duty [] is a question of fact"). Whether there is any evidence that will ultimately support those allegations will be determined at a later date. For now, the fiduciary duty claim should survive to see the sunrise.

### 2. The Williamses' motion to dismiss the unjust enrichment claim (Count 35) should be granted because there is an express contract.

The unjust enrichment claim against the Williamses is short and to the point:

> 150.   As alleged above, the Williamses obtained a benefit from Campbell, Sr. by fraud and taking undue advantage of him.
>
> 151.   As alleged above, the Williamses wrongfully secured or received a benefit from Campbell, Sr. that would be unconscionable for the Williamses to retain.

Dkt. 30 at 27–28. The Williamses argue that this unjust enrichment claim should be dismissed for two independent reasons: (1) the claim fails to meet the heightened pleading standard of Rule 9(b); and (2) a valid contract covers the subject matter of the parties' dispute. Because the second argument quickly disposes of the unjust enrichment cause of action, I need not determine the first.

Unjust enrichment is an equitable action for damages where one party "fail[s] to make restitution of benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to pay." *Albemarle Corp. v. MEMC Elec. Materials, Inc.*, 685 F. Supp. 2d 652, 658 (S.D. Tex. 2010) (quotation omitted). "Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory," *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000); and, hence, no claim for unjust enrichment. *See Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001) ("In Texas, unjust enrichment is based on quasi-contract and is unavailable when a valid, express contract governing the subject matter of the dispute exists."). Because the 28 promissory notes are express contracts at the center of the parties' dispute, the Williamses contend that the unjust enrichment claim must be dismissed.

In opposing dismissal of the unjust enrichment claim, Campbell, Jr. argues that there is no express contract to bar his unjust enrichment claim because the Williamses were not parties to the 28 promissory notes Campbell, Sr. executed with Texas Tea. This argument flies in the face of Texas law. *See Humana, Inc. v. Shrader & Assocs., LLP*, 584 B.R. 658, 686 (S.D. Tex. 2018) ( "[T]he rule barring claims for unjust enrichment covered by express contracts applies not only when a plaintiff seeks to recover from the party with whom he expressly contracted but also when a plaintiff seeks to recover from a third party who benefitted from the contract's performance."); *ConocoPhillips Co. v. Koopmann*, 542 S.W.3d 643, 664

(Tex. App.—Corpus Christi 2016) (collecting cases for the proposition that unjust enrichment is unavailable "when a plaintiff seeks to recover from a third party to the contract who benefitted from its performance"), *aff'd on other grounds*, 547 S.W.3d 858 (Tex. 2018); *Protocol Techs, Inc. v. J.B. Grand Canyon Dairy, L.P.*, 406 S.W.3d 609, 614 (Tex. App.—Eastland 2013, no pet.) (noting that the rule barring claims for unjust enrichment covered by express contracts "is applicable not only when the plaintiff is seeking to recover in equity from the party with whom [it] expressly contracted, but also when the plaintiff is seeking recovery from a third party foreign to the original contract but who is alleged to have benefited from its performance").[2] Accordingly, Campbell, Jr.'s claim for unjust enrichment against the Williamses should be dismissed.

## C.   CAMPBELL, JR.'S REQUEST TO AMEND

In response to the motions to dismiss filed by Texas Tea and the Williamses, Campbell, Jr. requests an opportunity to file yet another amended complaint in the event I believe his Second Amended Complaint fails to meet the applicable pleadings standards. Although it is true that district courts "should freely give leave [to amend] when justice so requires," FED. R. CIV. P. 15(a)(2), "leave to amend is in

---

[2] Campbell, Jr. relies entirely on a single bankruptcy case, *In re IFS Fin. Corp.*, No. 02-39553, 2007 WL 4244115 (Bankr. S.D. Tex. 2007), for the notion that unjust enrichment claims may proceed against the Williamses since they are not parties to the underlying promissory notes. In my view, Campbell, Jr. reads far too much into *In re IFS*. The *In re IFS* case is distinguishable from both a procedural and factual standpoint. Most notably, the *In re IFS* case did not discuss the key legal principle at issue here: whether the existence of an express contract forecloses equitable relief under an unjust enrichment theory of recovery against a non-contracting party. That is an issue of Texas law for which the courts have clearly spoken.

no way automatic." *Anokwuru v. City of Houston*, 990 F.3d 956, 966 (5th Cir. 2021) (quotation omitted).

Campbell, Jr. has already been given three (yes, three) opportunities to present viable claims—the Complaint, a First Amended Complaint, and a Second Amended Complaint. With respect to fraud, negligent misrepresentation, fraudulent transfer, and unjust enrichment, his claims are still deficient. At some point, enough is enough. A plaintiff is not automatically entitled to a third opportunity to amend his complaint. *See Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 391 (5th Cir. 2017) (holding that a district court did not abuse its discretion when it denied Plaintiffs a third opportunity to amend their complaint). Moreover, Campbell, Jr. does not indicate how he would cure the problems with the Second Amended Complaint if given another chance to amend. This failure to explain what facts would be included in a Third Amended Complaint spells doom for his request to amend. *See Rombough v. Bailey*, 733 F. App'x 160, 165 (5th Cir. 2018) ("[Plaintiff] failed to apprise the court of the facts she would plead in her amended complaint; therefore the district court did not err when it denied her motion to amend as futile.").

## CONCLUSION

For the reasons identified above, I recommend that Texas Tea's motion to dismiss (Dkt. 31) be **GRANTED**, and the fraud, negligent misrepresentation, and fraudulent transfer claims against Texas Tea and the Williamses be dismissed. I further recommend that the Williams's motion to dismiss be **GRANTED** in part,

and **DENIED** in part. More specifically, I recommend that the unjust enrichment claim be dismissed, but that the breach of fiduciary claim survive the motion to dismiss stage.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 6th day of May 2021.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE